Barbara A. Rohr (273353)
FARUQI & FARUQI LLP
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile:  (424) 256-2885

*Counsel for Plaintiff Gerald Douglas*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD DOUGLAS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FRANK WITNEY, NELSON CHAN, GARY GUTHART, JAMI NACHTSHEIM, RICCARDO PIGLIUCCI, MERILEE RAINES, ROBERT TRICE, and AFFYMETRIX, INC.,<br><br>Defendants. | Case No. 16-cv-00921-WHO<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR AN ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:        Hon. William H. Orrick |
| STEVEN MEROLA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FRANK WITNEY, NELSON CHAN, GARY GUTHART, JAMI NACHTSHEIM, RICCARDO PIGLIUCCI, MERILEE RAINES, ROBERT TRICE, and AFFYMETRIX, INC.,<br><br>Defendants. | Related Case No. 4:16-cv-01237-PJH |

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

1   JEFFREY S.L. CHEAH, Individually and on          Related Case No. 3:16-cv-1253-WHO
    Behalf of All Others Similarly Situated,

2                            Plaintiff,

3   v.

4   AFFYMETRIX, INC, JAMI DOVER
    NACHTSHEIM, FRANK WITNEY,

5   NELSON C. CHAN, GARY S. GUTHART,
    RICCARDO PIGLIUCCI, MERILEE

6   RAINES, ROBERT H. TRICE, THERMO
    FISHER SCIENTIFIC, INC. and WHITE

7   BIRCH MERGER CO.,

8                            Defendants.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

ARGUMENT .............................................................................................................. 4

I.    The Supplemental Disclosures Provided Affymetrix Shareholders With Required
      Material Information That Was Omitted From The Proxy .................................. 4

      A.    The Materiality Standard .......................................................................... 4

      B.    Morgan Stanley's Conflict of Interest as a Result of its Significant Holdings
            in the Buyer ............................................................................................... 5

      C.    Affymetrix Financial Measures ................................................................ 7

            1.    The Newly Disclosed Projected Metrics Were Material ..................... 7

            2.    The Disclosure Regarding Morgan Stanley's Treatment of Stock-
                  Based Compensation Was Material ................................................. 10

            3.    The Remaining Supplemental Disclosures Were Also Material ........... 12

II.   The Release Is Appropriate In Light Of The Discovery Conducted And The
      Weakness Of The Released Claims ................................................................. 13

      A.    A Breach of Fiduciary Duty Claim Is Not Viable ................................. 15

      B.    Federal Securities Law Claims Are Not Viable ..................................... 16

CONCLUSION ......................................................................................................... 18

16-CV-00921-WHO

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

i

1

2

**TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

3

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ................................................................................4

4

*Biver v. Nicholas Fin., Inc.*,
5
    No. 8:14-cv-250-T-33TGW, 2014 U.S. Dist. LEXIS 73933 (M.D. Fla. May 30, 2014) ........12

6

*Brown v. Brewer*,
7
    No. CV 06-3731-GHK, 2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010).................8

8

*In re Celera Corp. S'holder Litig.*,
    No. 6304-VCP, 2012 Del. Ch. LEXIS 66 (Del. Ch. Mar. 23, 2012),
9
    *rev'd in part on other grounds*, 59 A.3d 418 (Del. 2012) ......................................12

10

*Collier v. BrightPoint, Inc.*,
    No. 1:12-cv-1016-TWP-DKL, 2013 U.S. Dist. LEXIS 23616 (S.D. Ind. Feb. 21, 2013).........2

11

*Cooke v. Equal Energy Ltd.*,
12
    No. 5:14-cv-00087-C, Fed. Court Order and Final J. (W.D. Okla. Apr. 8, 2015)....................2

13

*Corwin v. KKR Fin. Holdings LLC*,
14
    125 A.3d 304 (Del. 2015) ............................................................................1

15

*In re Covidien PLC Sec. Litig.*,
    No. 1:14-cv-12949-LTS, Order and Final J. (D. Mass. Sept. 23, 2015).................................2
16

*In re Crestwood Midstream Partners Unitholder Litig.*,
17
    No. 4:13-cv-01528, Order and Final J. (S.D. Tex. May 16, 2014)...........................................2

18

*Davis v. Brown Shoe Co.*,
    No. 1:13-cv-01211-LJO-BAM,
19
    2015 U.S. Dist. LEXIS 149010 (E.D. Cal. Nov. 3, 2015) ..................................................3, 18

20

*In re Del Monte Foods Co. S'holders Litig.*,
21
    25 A.3d 813 (Del. Ch. 2011)........................................................................7

22

*DeMaria v. Andersen*,
23
    318 F.3d 170 (2d Cir. 2003)...................................................................16, 17

24

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ...............................................................................17

25

*Folger Adam Co. v. PMI Indus., Inc.*,
26
    938 F.2d 1529 (2d Cir. 1991).....................................................................4, 7

27

28

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

ii

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995).................................................................16

*Hertzberg v. Dignity Partners, Inc.*,
   191 F.3d 1076 (9th Cir. 1999) ..............................................16

*In re Ins. Brokerage Antitrust Litig.*,
   MDL No. 1663, 2007 U.S. Dist. LEXIS 11163 (D.N.J. Feb. 16, 2007)..........................17, 18

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964)..................................................................2

*In re John Q. Hammons Hotels Inc. S'holder Litig.*,
   No. 758-CC, 2009 Del. Ch. LEXIS 174 (Del. Ch. Oct. 2, 2009) ............................7

*Kramas v. Sec. Gas & Oil Inc.*,
   672 F.2d 766 (9th Cir. 1982) ................................................4

*Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*,
   No. 5002, 2009 Del. Ch. LEXIS 210 (Del. Ch. Nov. 18, 2009)..........................11, 12

*Larkin v. Shah*,
   No. 10918-VCS, 2016 Del. Ch. LEXIS 134 (Del. Ch. Aug. 25, 2016)..........................15, 16

*Latesco, L.P. v. Wayport, Inc.*,
   No. 4167-VCL, 2009 Del. Ch. LEXIS 145 (Del. Ch. July 24, 2009)....................16

*In re Lear Corp. S'holder Litig.*,
   926 A.2d 94 (Del. Ch. 2007).................................................7

*Lewis v. Anderson*,
   477 A.2d 1040 (1984) ..........................................................14

*Lone Star Steakhouse & Saloon, Inc. v. Adams*,
   148 F. Supp. 2d 1141 (D. Kan. 2001) ..................................3

*Polaroid Corp. v. Disney*,
   862 F.2d 987 (3rd Cir. 1988) ..............................................3

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
   MDL No. 2328, 2015 U.S. Dist. LEXIS 97578 (E.D. La. July 27, 2015)..........................17

*In re Rural Metro Corp. Stockholders Litig.*,
   88 A.3d 54 (Del. Ch. 2014).................................................6, 7

*Santa Fe Indus. v. Green*,
   430 U.S. 462 (1977)..............................................................1, 2

16-CV-00921-WHO

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

iii

*In re Schering-Plough/Merck Merger Litig.*,
  No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 25, 2010) ................... 2

*Schulein v. Petroleum Dev. Corp.*,
  No. SACV 11-1891 AG (ANx), 2014 U.S. Dist. LEXIS 71236 (C.D. Cal. May 19, 2014) ..... 8

*Singh v. Attenborough*,
  No. 645, 2015, 2016 Del. LEXIS 276 (Del. May 6, 2016) .................................................... 15

*Smith v. Robbins & Myers, Inc.*,
  969 F. Supp. 2d 850 (S.D. Ohio 2013) ........................................................................... 8, 12

*St. Louis Police Ret. Sys. v. Severson*,
  No. 12-CV-5086-YGR, 2012 U.S. Dist. LEXIS 152392 (N.D. Cal. Oct. 23, 2012) ................ 3

*TSC Indus. v. Northway, Inc.*,
  426 U.S. 438 (1976) ............................................................................................................ 4

*In re Volcano Corp. Stockholder Litig.*,
  No. 10485-VCMR, 2016 Del. Ch. LEXIS 99 (Del. Ch. June 30, 2016) ............................... 15

*Weiss v. Amkor Tech., Inc.*,
  527 F. Supp. 2d 938 (D. Ariz. 2007) ............................................................................... 17

**Statutes**

8 Del. C. § 327 ...................................................................................................................... 14

**Other Authorities**

17 C.F.R. § 244.100 ................................................................................................................ 4

Steven M. Davidoff,
  *Fairness Opinions*, 55 Am. U.L. Rev. 1557 (Aug. 2006) ..................................................... 11

Nicolas Grabar and Sandra Flow,
  *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School
  Forum on Corporate Governance and Financial Regulation (June 24, 2016) .................... 9, 10

Gretchen Morgenson,
  *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016 .... 9

Keynote Address, International Corporate Governance Network Annual Conference: Focusing
  the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and
  Sustainability (June 27, 2016) ...................................................................................... 4, 5

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

iv

1

## INTRODUCTION

Pursuant to the Court's September 7th minute entry (ECF No. 41), Plaintiffs[1] submit this memorandum in further support of their Preliminary Approval Motion, supported by the expert affidavit of M. Travis Keath ("Keath Aff.").[2]  Plaintiffs also submit a revised notice, conformed to the Court's guidelines for class action settlements.[3]

Plaintiffs entered into the Settlement after having obtained substantial benefits for the Settlement Class through the disclosure of material information concerning the process to sell Affymetrix and the Company's internal projected financial measures, which were expressly relied on by the Defendants to recommend that shareholders vote for the Transaction and by the Company's financial advisor to render its opinion that the Transaction was fair to the Company's shareholders.  These disclosures, required under regulations promulgated by the Securities and Exchange Commission ("SEC") and/or to correct other misleading statement in the Proxy, remedied  Defendants' violations of Section 14(a) of the Exchange Act,[4] an act that is expressly

---

[1]     Unless otherwise noted, all capitalized terms have the same definition as set forth in Plaintiffs' Unopposed Motion For An Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion") (ECF No. 38).

[2]     Attached as Exhibit A to the Declaration of Barbara A. Rohr in Further Support of Plaintiffs' Unopposed Motion for an Order Granting Preliminary Approval of Class Action Settlement (the "Rohr Decl.").

[3]     Attached as Exhibit B to Rohr Decl.  Defendants have advised Plaintiffs' counsel that they will retain either Kurtzman Carson Consultants (KCC) or Epiq Systems, Inc. to act as notice administrator.  Both are well-known and experienced class action notice administrators.

[4]     Plaintiffs thoroughly investigated the state law claims for breach of fiduciary duty after obtaining the additional disclosures pursuant to the terms of the Memorandum of Understanding ("MOU"), and have concluded that those claims have been rendered unviable in light of Affymetrix's shareholders' vote approving the Merger after the Supplemental Disclosures were made.  That vote lowered the applicable standard of review of the Board's actions from a heightened "enhanced scrutiny" standard to the much lower and irrebutable "business judgment" standard.  *See Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304, 314 (Del. 2015) ("[W]here the stockholders have had the voluntary choice to accept or reject a transaction, the business judgment rule standard of review is the presumptively correct one. . . .").  Because a majority of Affymetrix's shareholders have spoken, and decided to accept the Merger Consideration, Plaintiff's' allegations that the Merger Consideration was inadequate are largely irrelevant to the Court's analysis of the Settlement.  *See id*; *see also Santa Fe Indus. v. Green*, 430 U.S. 462, 478

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

designed to "to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation," and "stemmed from the congressional belief that fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange." *J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964) (internal quotation marks omitted).

Since Section 14(a)'s "fundamental purpose" is to require "full disclosure," *Santa Fe Indus.*, 430 U.S. at 478, courts have consistently approved settlements similar to the present one, where corporations and directors agree to provide shareholders with previously withheld material information concerning a corporate transaction in exchange for a release of certain fiduciary duty and federal securities law claims related to the transaction. *See e.g., In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *48-49 (D.N.J. Mar. 25, 2010) (approving settlement where "the supplemental disclosures facilitated communication and informed shareholders of previously undisclosed material information permitting shareholders to exercise their voting rights accordingly."); *Collier v. BrightPoint, Inc.*, No. 1:12-cv-1016-TWP-DKL, 2013 U.S. Dist. LEXIS 23616, at *3 (S.D. Ind. Feb. 21, 2013) (approving settlement that "compel[led] Defendants to make certain disclosures to Defendants' shareholders."); *In re Crestwood Midstream Partners Unitholder Litig.*, No. 4:13-cv-01528, Order and Final J. (S.D. Tex. May 16, 2014) (same);[5] *In re Covidien PLC Sec. Litig.*, No. 1:14-cv-12949-LTS, Order and Final J. (D. Mass. Sept. 23, 2015) (same);[6] *Cooke v. Equal Energy Ltd.*, No. 5:14-cv-00087-C, Fed. Court Order and Final J. (W.D. Okla. Apr. 8, 2015) (same).[7]

As explained below, and supported by the affidavit of Plaintiffs' financial expert M. Travis Keath, the information procured via the Settlement was required and material to

---

(1977) (explaining that with respect to claims under the Exchange Act, "once full and fair disclosure has occurred, the fairness of the terms of the transaction is at most a tangential concern of the statute.").

[5]    Attached as Exhibit C to the Rohr Decl.
[6]    Attached as Exhibit D to Rohr Decl.
[7]    Attached as Exhibit E to Rohr Decl.

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

1   Affymetrix shareholders in connection with their decision concerning whether or not to vote for

2   the Merger.   Conversely, the Released Claims, limited solely to those claims related to the

3   Transaction possessed by the Settlement Class members, are no longer viable.   Indeed, the

4   material information Plaintiffs obtained for the Class *prior* to a significant shareholder vote

5   preserved shareholders' invaluable corporate suffrage rights, rights that cannot be restored

6   through monetary damages.   *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d

7   1141, 1149-50 (D. Kan. 2001); *St. Louis Police Ret. Sys. v. Severson*, No. 12-CV-5086-YGR,

8   2012 U.S. Dist. LEXIS 152392, at *16 (N.D. Cal. Oct. 23, 2012) ("[D]isclosure deficiencies

9   cannot be remedied effectively by an after-the-fact damages case") (internal quotation marks

10   omitted).[8]

11         At bottom, this Settlement, in line with settlements in other similar shareholder actions,

12   "is within the range of possible approval," and therefore warrants an order from this Court

13   permitting notice to be sent to Class members so that they can weigh the merits of the

14   Settlement.   *Davis v. Brown Shoe Co.*, No. 1:13-cv-01211-LJO-BAM, 2015 U.S. Dist. LEXIS

15   149010, at *5 (E.D. Cal. Nov. 3, 2015) ("At the preliminary approval stage, the court determines

16   whether the proposed is within the range of possible approval and whether or not notice should

17   be sent to class member.").   For the foregoing reasons, the Settlement is within such a range, and

18   should therefore be preliminarily approved.

19

20

21

22

23   ───────────────
     [8]      *See also Polaroid Corp. v. Disney*, 862 F.2d 987, 1006 (3rd Cir. 1988) ("While Congress
24   has determined that accurate disclosure is important to shareholders, it would often be impossible
     for shareholders to prove that on the facts of their particular tender offer accurate disclosure
25   would have affected their decision making in a particular way with concomitant quantifiable
     monetary loss.   The inadequacy of a remedy at law and the importance that Congress has
26   attached to accurate disclosure of material information establishes irreparable harm.").

27   ─────────────────────────────────────────────────────────────────────

28   PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
     AN ORDER GRANTING PRELIMINARY APPROVAL OF
     CLASS ACTION SETTLEMENT

**ARGUMENT**

**I.     The Supplemental Disclosures Provided Affymetrix Shareholders With Required Material Information That Was Omitted From The Proxy**

**A.     The Materiality Standard**

A Company must disclose information in a proxy disseminated to solicit shareholder votes "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). While the Supreme Court in *TSC* explained that for omitted information to be material it must "have assumed actual significance in the deliberations of the reasonable shareholder," the Court also explicitly held that the omitted information *need not* "have caused the reasonable investor to change his vote" with respect to the transaction at issue. *Id*; *see also Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988); *Kramas v. Sec. Gas & Oil Inc*., 672 F.2d 766, 769 (9th Cir. 1982) (same).

As the Second Circuit explained in interpreting the Supreme Court's *TSC* opinion: "[*I*]*t is well-established that a material fact need not be outcome-determinative; that is, it need not be important enough that it would have caused the reasonable investor to change his vote*.  Rather, the information need only be important enough that it would have assumed actual significance in the deliberations of the reasonable shareholder." *Folger Adam Co. v. PMI Indus., Inc*., 938 F.2d 1529, 1533 (2d Cir. 1991) (emphasis added) (citations omitted) (internal quotation marks omitted).

Moreover, the SEC requires the disclosure of certain information in solicitation materials. Thus, when a company discloses material information in a Proxy that includes non-GAAP financial measures, the Company must also disclose that non-GAAP financial measure with comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.[9]

---

[9]     The SEC Chair, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as was the case in the Affymetrix Transaction), implicates the centerpiece of the SEC's disclosures regime. "In too many cases, the non-GAAP information, which is meant to supplement the GAAP information,

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

By any measure, be it the Supreme Court's materiality standard or the SEC's regulatory mandates, the Supplemental Disclosures provided Affymetrix shareholders with material information necessary to afford them the opportunity to make an informed decision regarding whether to follow the Board's recommendation and approve the Transaction.

### B.   Morgan Stanley's Conflict of Interest as a Result of its Significant Holdings in the Buyer

First, the Supplemental Disclosure regarding Morgan Stanley's holding of approximately 2% of Thermo Fisher's outstanding common stock was of particular significance to Affymetrix shareholders.   The Proxy originally merely included a standard boiler plate sentence, which appears in every proxy statement, that:

> Morgan Stanley, its affiliates, directors and officers *may* at any time invest on a principal basis or manage funds that invest, hold long or short positions, finance positions, and may trade or otherwise structure and effect transactions, for their own account or the accounts of its customers, in debt or equity securities or loans of Affymetrix, Thermo Fisher or any other company, or any currency or commodity, that may be involved in this transaction, or any related derivative instrument.

Proxy at 37.

---

has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures **misleading**: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures." *See* Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability (June 27, 2016), www.sec.gov/news/speech/chair-white-icgn-speech.html#_ftnref38 (emphasis added) (footnotes omitted).

---

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR AN ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1     This boilerplate disclosure itself was at best misleading, because it alludes to potential

2 future transactions in Thermo Fisher rather than Morgan Stanley's then current position.  Morgan

3 Stanley's equity investment in the buyer was a factor that shareholders were entitled to know

4 about when weighing the credibility of the Morgan Stanley Fairness Opinion.  Disclosing to

5 shareholders that the banker upon whose fairness opinion they are being asked to rely "may at

6 any time" hold a position in the acquiring company actually tells them nothing about the

7 potential impact such holdings may have on the advisor's willingness to support the transaction.

8 In order to properly assess the significance of the conflict, shareholders must have an

9 understanding of the *financial significance* of the banker's holdings in the buyer at the time the

10 banker rendered its fairness opinion.   That is exactly what Affymetrix shareholders were

11 informed of here as a result of the Supplemental Disclosures.

12     Specifically, shareholders learned that Morgan Stanley **actually held** approximately 2%

13 of Thermo Fisher's outstanding common stock during the relevant time frame.  A 2% holding

14 equated to approximately **8 million** of Thermo Fisher's 395 million outstanding shares, which,

15 based upon Thermo Fisher's $134.16 closing price on January 8, 2016 (the date Morgan Stanley

16 rendered its fairness opinion) were worth **over $1 billion**.   Such a sizeable holding clearly

17 constituted a significant conflict of interest, which Affymetrix shareholders were entitled to

18 know about and assess in connection with determining how much weight, if any, to afford to

19 Morgan Stanley's fairness opinion and underlying valuation analyses.

20     Indeed, as courts have consistently emphasized, "[i]nformation that bears on whether an

21 investment bank faces conflicts of interest is material to stockholders when deciding how to vote

22 on a merger. . . ."  *In re Rural Metro Corp. Stockholders Litig.*, 88 A.3d 54, 105 (Del. Ch. 2014).

23 "It is imperative for the stockholders to be able to understand what factors *might* influence the

24 financial advisor's analytical efforts.  A financial advisor's own proprietary financial interest in a

25 proposed merger must be carefully considered in assessing how much credence to give its

26 analysis.  For that reason, the benefits of the Merger to the investment banker, beyond its

27

28

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

expected fee, must also be disclosed to the stockholders." *Id.* (quoting *David P. Simonetti Rollover ISA v. Margolis*, No. 3694-VCN, 2008 Del. Ch. LEXIS 78, at *25-26 (Del. Ch. June 27, 2008)); *In re Del Monte Foods Co. S'holders Litig.*, 25 A.3d 813, 832 (Del. Ch. 2011) (same); *In re John Q. Hammons Hotels Inc. S'holder Litig.*, No. 758-CC, 2009 Del. Ch. LEXIS 174, at *55-56 (Del. Ch. Oct. 2, 2009) (same); *In re Lear Corp. S'holder Litig.*, 926 A.2d 94, 114 (Del. Ch. 2007) ("Put simply, a reasonable stockholder would want to know an important economic motivation of the negotiator singularly employed by a board to obtain the best price for the stockholders, when that motivation could rationally lead that negotiator to favor a deal at a less than optimal price, because the procession of a deal was more important to him, given his overall economic interest, than only doing a deal at the right price."). Further, "[t]here is no rule that conflicts of interest must be disclosed only where there is evidence that the financial advisor's opinion was actually affected by the conflict." *Rural Metro*, 88 A.3d at 105 (internal quotation marks omitted). Thus, all factors that may entice a financial advisor to favor a particular transaction must be fully disclosed. *See id.*

Based on the foregoing authority, this undoubtedly constituted material information which would have "assumed actual significance in [stockholders'] deliberations" regarding the Merger and the credibility of Morgan Stanly's fairness opinion. *Folger Adam Co.*, 938 F.2d at 1533.

### C.   Affymetrix Financial Measures

#### 1.   The Newly Disclosed Projected Metrics Were Material

Plaintiffs also obtained in the Supplemental Disclosures the disclosure of projected GAAP measures as well as the projected inputs used to calculate the non-GAAP measure "levered free cash flow" (collectively, the "Newly Disclosed Projections").

The Newly Disclosed Projections included: (i) depreciation & amortization; (ii) interest expense; (iii) taxes; (iv) litigation expense; (v) change in working capital/other; and (vi) capital expenditures. The Newly Disclosed Projections were relied upon by Morgan Stanley in

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

connection with its valuation analyses and relied upon by the Board in assessing the fairness of the Merger, but were omitted from the Proxy.[10]  These inputs were material to shareholders as they disclose the manner by which the Company management determined Affymetrix's free cash flows, a non-GAAP measure that is a critical input in Morgan Stanley's valuations and ultimate Fairness Opinion.

Additionally, Defendants added a new footnote to clarify the treatment of these projected measures for purposes of running the levered free cash flow.  *See* Proxy at 39.

As an initial matter, numerous courts have recognized the materiality of management's internal financial projections.  *See, e.g., Brown v. Brewer*, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *70 (C.D. Cal. June 17, 2010) ("A reasonable shareholder would have wanted to independently evaluate management's internal financial projections to see if the company was being fairly valued.  There is a substantial likelihood that a reasonable shareholder would consider it important in making his decision" (internal quotation marks omitted); *Schulein v. Petroleum Dev. Corp.*, No. SACV 11-1891 AG (ANx), 2014 U.S. Dist. LEXIS 71236, at *19 (C.D. Cal. May 19, 2014) (same).  Further, "if a Proxy disclosed valuation information, it must be complete and accurate."  *Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 874 (S.D. Ohio 2013) (quoting *Brown*, 2010 U.S. Dist. LEXIS 60863, at *69-70).  Indeed, the *Smith* Court denied a motion to dismiss a Section 14(a) claim premised in part upon the omission of financial projections for depreciation and amortization, capital expenditures and changes in working capital from a proxy statement, the exact projections that were provided to shareholders here as a result of the Supplemental Disclosures.  969 F. Supp. 2d at 874.

---

[10]     "The Board considered Affymetrix's financial condition, results of operations and business and earnings prospects if it were to remain independent in light of various factors, including a consolidating market, Affymetrix's current and anticipated near-term operating results, the competitive dynamics of the life sciences and diagnostics sector and Company's ability to execute on its strategic plan. . . ."  Proxy at 23.

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

1       Further, the Newly Disclosed Projections were particularly important here, because they

2 allowed Affymetrix shareholders to make sense of the various unique "adjustments" made to the

3 previously disclosed non-GAAP projections that were included in the Proxy. *See* Keath Aff. ¶

4 23, 27. Specifically, the Proxy included projections for adjusted earnings before interest, taxes,

5 depreciation, and amortization ("EBITDA"), a non-GAAP measure that takes EBITDA and then

6 makes various "adjustments" by adding or subtracting certain other line item projections.

7 Additionally, the Supplemental Disclosures clarified that the "free cash flow" projections, as

8 they were *incorrectly* labeled in the Proxy, were actually "**levered** free cash flow" projections

9 (rather than the typical "unlevered free cash flows" which are projected cash flows available

10 before paying company financial obligations), and further explained that such a metric is a non-

11 GAAP measure that was adjusted by adding or subtracting the Newly Disclosed Projections.

12 Keath Aff. ¶ 11, 13-15. All of this information in the Supplemental Disclosures was material

13 and critical for shareholders, because the Proxy expressly stated that the Board reviewed these

14 projections when considering the Transaction and as a basis to tell shareholders to vote in favor

15 of the Transaction. *See id.*

16       In recent months, the SEC has repeatedly emphasized that disclosure of non-GAAP

17 projections can be inherently misleading, and has therefore heighted its scrutiny of the use of

18 such projections. *See, e.g*., Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures:*

19 *The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial

20 Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-

21 measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies*

22 *Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/

23 2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0;

24 Keath Aff. ¶ 26. Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released

25 new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-

26 GAAP financial measures that demonstrate the SEC's tightening policy. Grabar, *Non-GAAP*

27

28

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

*Financial Measures: The SEC's Evolving Views*.  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling items that are available without unreasonable efforts.  *Id*.  The Newly Disclosed Projections are precisely the types of "reconciling items" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders. *See* Keath Aff. ¶ 23, 27.

In sum, the Newly Disclosed Projections were required by specific SEC regulations and particularly material to Affymetrix shareholders and, standing alone, warrant preliminarily approving the Settlement.

### 2.   The Disclosure Regarding Morgan Stanley's Treatment of Stock-Based Compensation Was Material

The Supplemental Disclosure regarding the Company's and Morgan Stanley's treatment of stock based compensation in connection with certain valuation methods was also material to Affymetrix shareholders.  *See* Keath Aff. ¶ 17.

Stock-based compensation ("SBC") was a significant expense for Affymetrix and its treatment was material to shareholders.  As with other financial metrics, if a company is going to deviate from GAAP treatment for a particular significant financial metric, that must be disclosed.[11]   The implications of the treatment of SBC on a company's financials can be enormous if the company relies in significant measure on SBC.

In this case, Morgan Stanley disclosed that, in running its Discounted Cash Flow Analysis, it did the following:

> Morgan Stanley calculated Affymetrix' annual unlevered free cash flows by taking Affymetrix' projected Adjusted EBITDA *less stock-based compensation*, litigation expense, change in working capital / other, capital expenditures, and normalized taxes based on assumptions provided by Affymetrix.

---

[11]   Prior to 2006, companies were not required to treat SBC as an expense under GAAP. The Financial Accounting Standards Board ("FASB") changed the GAAP treatment so that SBC is reflected as a cost to the company.

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR AN ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Proxy at 36 (emphasis added).

The Company's projected "levered free cash flows" were calculated starting with its net income "*plus* depreciation & amortization, stock-based compensation and change in working capital / other, minus capital expenditures…"  Proxy at 39 n.2 (emphasis added).

The discounted cash flow analysis is the most significant analysis upon which a fairness opinion can rest.  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1575-76 (Aug. 2006) ("in the corporate control transaction paradigm the most important analysis is, absent unusual circumstances, the discounted cash flow calculus."); Keath Aff. ¶ 9.  Rather than valuing a company by comparing it with other companies through a multiples analysis, the DCF attempts to value a company based on its own projections of internal financial measures.  Here, the Supplemental Disclosures revealed the manner in which Morgan Stanley treated SBC in conducting its "most important analysis," which ultimately had the effect of decreasing the valuation of Affymetrix underlying the Fairness Opinion.  *See* Keath Aff. ¶ 17.

Moreover, the Supplemental Disclosures revealed the following regarding Affymetrix's SBC:

> For the purposes of the selected comparable companies analysis, Morgan Stanley used **adjusted EBITDA figures for Affymetrix**, rather than unadjusted EBITDA figures which were used to formulate the applicable pricing multiples for the selected comparable companies, because in Morgan Stanley's professional judgment **using adjusted EBITDA was necessary to account for Affymetrix' use of stock-based compensation, which was larger as a percentage of unadjusted EBITDA compared to that of its peers**.

Proxy at 33 (emphasis added).

Courts have found that this precise type of information is material to shareholders in assessing a discounted cash flow analysis, as it calls into question the legitimacy of the analysis. For example, as the Delaware Court of Chancery explained in *Laborers Local 235 Benefit Funds v. Starent Networks, Corp*., No. 5002, 2009 Del. Ch. LEXIS 210, at *2 (Del. Ch. Nov. 18, 2009):

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR AN ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

> [T]he discounted cash flow analysis -- arguably the most important valuation metric -- treats the stock-based compensation as a cash expense. This change in norms, from a non-cash expense to a cash expense, allegedly results in a lower valuation range. Though there may be a valid reason for the treatment of the stock-based compensation in the discounted cash flow analysis, that this detour is not disclosed or otherwise highlighted in the relevant proxy statement section gives me pause. Thus, plaintiff has established a colorable disclosure claim. As a disclosure claim, it threatens irreparable harm by omitting material information or by misleading stockholders regarding information that a reasonable investor would want to know before making a decision.

*See also In re Celera Corp. S'holder Litig.*, No. 6304-VCP, 2012 Del. Ch. LEXIS 66, at *87-88 (Del. Ch. Mar. 23, 2012), *rev'd in part on other grounds*, 59 A.3d 418 (Del. 2012) (finding the corrective disclosure that stock-based compensation was "unusual[ly]" and "uncommon[ly]" treated as a cash expense to be "significant").  Federal courts have similarly recognized that the failure to disclose questionable valuation assumptions underlying a fairness opinion constitutes a violation of Section 14(a).  *See, e.g., Smith*, 969 F. Supp. 2d at 871 (denying motion to dismiss Section 14(a) claim where proxy failed to disclose "how stock-based compensation was treated in Citi's DCF analysis"); *Biver v. Nicholas Fin., Inc.*, No. 8:14-cv-250-T-33TGW, 2014 U.S. Dist. LEXIS 73933, at *13 (M.D. Fla. May 30, 2014) (denying motion to dismiss Section 14(a) claim where proxy "summarize[d] Janney's two relative valuation analyses and equity discounted cash flow analysis in a manner that fails to provide shareholders with sufficient information to make an informed decision[.]").

Accordingly, the Supplemental Disclosure regarding Morgan Stanley's assumptions in connection with its Discounted Cash Flow Analysis was also material to Affymetrix shareholders.  *See* Keath Aff. ¶ 14-17.

### 3.     The Remaining Supplemental Disclosures Were Also Material

Plaintiffs respectfully submit that the above-referenced Supplemental Disclosures more than sufficiently place the Settlement within the range of possible approval.  Accordingly, for the sake of brevity, rather than repeating arguments about the significance of the remaining

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

1    Supplemental Disclosures here, Plaintiffs incorporate by reference their arguments from their

2    Preliminary Approval Motion concerning the value of the remaining Supplemental Disclosures.

3    **II.     The Release Is Appropriate In Light Of The Discovery Conducted And The Weakness Of The Released Claims**

4

5          The Release provided for by the Settlement is similar to releases which have been

6    approved numerous times in similar cases, *see, e.g.*, Rohr Decl. Exs. C-E, and is appropriate in

7    light of the underlying facts surrounding the Merger and discovery conducted.

8          First, the Release only applies to a finite group of Affymetrix shareholders - those who

9    held shares "at any time during the period beginning on and including August 12, 2015 through

10   and including March 31, 2016, the date of the consummation of the Merger. . . ."  Stipulation ¶

11   1.16.  Any former shareholders of the Company who did not hold their shares during that period

12   are not affected by the Release.

13         Second, focusing on the essential words, the Released Claims include:

14
15                [C]auses of action…whether known or unknown…that have been
16                [or] could have been [] asserted [] by or on behalf of Plaintiffs and
                  any or all members of the Settlement Class **in their capacity as**
17                **shareholders of Affymetrix** … t**hat relate in any way to** (i) the
                  Merger Agreement or the Merger or any amendment thereto; (ii)
18                the fiduciary and other duties owed by Defendants and the
                  Released Parties to shareholders of Affymetrix in connection
19                therewith; (iii) Defendants' disclosure obligations under federal,
                  state, or any other law in connection with the Merger Agreement or
20                the Merger; (iv) the adequacy of the consideration to be paid to
                  Affymetrix shareholders in connection with the Merger or any
21                amendment thereto; (v) the negotiations in connection with the
                  Merger Agreement, or any amendment thereto, including any
22                alleged deal protection devices, (vi) the alleged aiding and abetting
                  of any breach of fiduciary duty in connection with the Merger
23                Agreement or the Merger; (vii) any alleged improper personal
                  benefit, conflict of interest, improper payments of any
24                remuneration or employment benefits to any individual made in
                  connection with the Merger Agreement or the Merger; (viii) the
25                allegations in the Actions; and (ix) any other claim related in any
                  way to any of the foregoing[.]
26

27

28
PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

Stipulation ¶ 1.13 (emphasis added).

First, the release only applies to claims "that have been or could have been asserted by Plaintiffs or any member of the Class **in their capacity as shareholders**[.]" *Id.*  From Plaintiffs' perspective, the claims one could bring "in their capacity as stockholders" would be claims for breach of fiduciary duty or violations of the federal securities laws, including disclosure claims, and derivative claims.

Any Affymetrix derivative claims have been extinguished by consummation of the Transaction, so there are no longer any derivative claims that could be asserted. *Lewis v. Anderson*, 477 A.2d 1040, 1049 (1984) (holding that once a plaintiff "ceases to be a shareholder, whether by reason of a merger or for any other reason, [he] loses standing to continue a derivative suit"); 8 Del. C. § 327 (providing that a derivative stockholder must be a stockholder at the time of the alleged wrong as well as throughout the course of the litigation).  Moreover, Plaintiffs are confident that, had any viable derivative claims related to the Merger existed, they would have been revealed by the discovery undertaken in connection with this Action.

Further, not only is the release limited to claims in the "capacity as stockholders," but they are effectively limited to stockholder claims relating to the Merger.  These are, again, precisely the claims the Plaintiffs explored and analyzed in the Action, and they are appropriate for release under these circumstances.  As set forth more fully in the Preliminary Approval Motion, prior to entering into the Stipulation, Plaintiffs' counsel conducted discovery to confirm the reasonableness of the Settlement and explore the viability of any post-close damages claims arising out of the Merger.  Specifically, Plaintiffs' counsel reviewed various documents related to the Merger, including Board presentations, minutes, and email correspondence, and took three depositions of the individuals most knowledgeable about the Merger, including Affymetrix's CEO, the Chairman of the Board, and a managing director at Morgan Stanley.  During discovery, Plaintiffs' counsel explored the sale process conducted by the Board, the Board's process of evaluating the fairness of the Merger to Affymetrix shareholders, the valuation analyses utilized

16-CV-00921-WHO

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

14

by Morgan Stanley in support of its fairness opinion, Affymetrix's financial projections, and the views of the Board and management regarding the Company's operations and strategic options. Further, Plaintiffs' counsel consulted with their financial expert, who has extensive experience in valuing companies like Affymetrix, to evaluate the consideration Affymetrix shareholders received in the Merger.

After completing discovery and analyzing the relevant law regarding potential claims shareholders could assert in connection with the Merger, Plaintiffs' counsel concluded that such claims are not currently viable as both a matter of law and in light of known facts. Therefore, there is little to no risk to the Class in releasing such claims.

## A.    A Breach of Fiduciary Duty Claim Is Not Viable

Breach of fiduciary duty claims arising out of the Merger are not viable because: (i) Affymetrix did not have a controlling stockholder; (ii) the Supplemental Disclosures cured all the information deficiencies in the Proxy, as Plaintiffs did not find that any additional material information had been omitted from the Proxy during discovery; and (iii) Affymetrix shareholders subsequently approved the Merger via a fully-informed, uncoerced vote. Fiduciary duty claims would be governed by Delaware law, as Affymetrix was a Delaware corporation. And as the Delaware Supreme Court and Court of Chancery have repeatedly emphasized in several recent cases, "the approval of a merger by a majority of a corporation's outstanding shares pursuant to a statutorily required vote of the corporation's fully informed, uncoerced, disinterested stockholders renders the business judgment rule *irrebuttable*." *In re Volcano Corp. Stockholder Litig.*, No. 10485-VCMR, 2016 Del. Ch. LEXIS 99, at *27-34 (Del. Ch. June 30, 2016) (emphasis added) (citing *Singh v. Attenborough*, No. 645, 2015, 2016 Del. LEXIS 276, at *1 (Del. May 6, 2016)); *Larkin v. Shah*, No. 10918-VCS, 2016 Del. Ch. LEXIS 134, at *39 (Del. Ch. Aug. 25, 2016) (analyzing recent Delaware Supreme court opinions and holding that "the business judgment rule irrebuttably applies if a majority of disinterested, uncoerced stockholders approve a transaction absent a looming conflicted controller."). This "irrebuttable business

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

1    judgment rule" presumption makes it virtually impossible to succeed upon fiduciary duty claims

2    predicated upon a transaction that was approved by shareholders.  *See id.*

3            The only remaining potential claim under Delaware law would be a claim for waste,

4    which is also not viable.  As the Delaware Supreme court explained in *Singh*: "When the

5    business judgment rule standard of review is invoked because of a vote, dismissal is typically the

6    result.  That is because the vestigial waste exception has long had little real-world relevance,

7    because it has been understood that stockholders would be unlikely to approve a transaction that

8    is wasteful.  Certainly, there is no rational argument that waste occurred here."  2016 Del. LEXIS

9    276, at *151-152.  And because Settlement Class members cannot feasibly establish a predicate

10   breach of fiduciary duty claim, any claims for aiding and abetting against Morgan Stanley or any

11   other actor are also not viable.  *Latesco, L.P. v. Wayport, Inc.*, No. 4167-VCL, 2009 Del. Ch.

12   LEXIS 145, at *36 (Del. Ch. July 24, 2009) ("Because the court has already determined that the

13   plaintiffs have failed to state a claim for breach of fiduciary duty by the director defendants, it is

14   impossible to state a claim for aiding and abetting a breach of fiduciary duty predicated on any

15   such breach.").

16          **B.      Federal Securities Law Claims Are Not Viable**

17          Plaintiffs' counsel have also determined that there are no viable federal securities claims

18   related to the Merger that are being released.

19          First, neither Affymetrix nor Thermo Fisher issued or registered any stock as part of the

20   Merger, as it was an all-cash deal, thereby eliminating the possibility of claims under the '33

21   Act.  *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 578 (1995) (holding that Section 12(a)(2)

22   actions under the 1933 Act could only be brought by plaintiffs purchasing securities out of the

23   public offering as opposed to the aftermarket); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d

24   1076, 1080 n.4 (9th Cir. 1999) (holding that persons who purchased securities in the aftermarket

25   could assert a Section 11 claim if they could trace the shares to the registered offering); *DeMaria*

26   *v. Andersen*, 318 F.3d 170, 178 (2d Cir. 2003) (holding that plaintiffs may have standing under

27

28

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

1   Section 11 if they purchased shares in the aftermarket that can be traced back to the offering).

2   Further, to state a Section 10(b)/Rule 10b-5 claim, a plaintiff would have to show that

3   some currently unknown material misrepresentation or omission which Defendants made with

4   scienter caused the Class to suffer economic loss.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S.

5   336, 347 (2005).  It has been over nine months since the Merger was announced, and no facts

6   have emerged during discovery or publicly to suggest a viable securities fraud claim in

7   connection with the Merger exists, nor is Plaintiffs' counsel aware of any other attorneys

8   investigating such claims.   And, even in the unlikely event that some unknown material

9   misrepresentation or omission in connection with the Merger emerged, Settlement Class

10  members would be unlikely to establish loss causation based on the Company's stock price

11  performance between the announcement of the Merger and the date upon which the Company's

12  shares ceased trading, March 31, 2016.  *See Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938,

13  946 (D. Ariz. 2007) ("As numerous Courts have concluded, *Dura* indeed requires Plaintiffs to

14  plead loss causation by alleging that the stock price fell after the truth of a misrepresentation

15  about the stocks was revealed.").

16  Lastly, any Section 14(a) claims the Class had were cured by the Supplemental

17  Disclosures, as Plaintiffs' counsel did not unearth any additional disclosure issues during

18  discovery.

19  In sum, the scope of the Release is appropriate, as identical releases have been approved

20  in numerous class action cases including those similar to the one at issue, and Plaintiffs' counsel

21  conducted discovery sufficient to conclude that the likelihood of obtaining a monetary recovery

22  in connection with any of the Released Claims is exceedingly low.  Indeed, broader releases have

23  been approved in the class action context.  *See, e.g., In re Ins. Brokerage Antitrust Litig.*, MDL

24  No. 1663, 2007 U.S. Dist. LEXIS 11163, at *66 (D.N.J. Feb. 16, 2007) ("In class action

25  settlements, releases may include all claims that arise out of the same course of conduct alleged

26  in the Complaint[,] releases of known and unknown claims[,] or even claims over which the

27

28

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

court lacked jurisdiction.") (internal quotation marks omitted); *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, MDL No. 2328, 2015 U.S. Dist. LEXIS 97578, at *33 (E.D. La. July 27, 2015) ("The Court finds that these releases are not impermissibly broad. Courts have consistently approved releases in class action settlements that discharge unknown claims relating to the factual issues in the complaint.").

## CONCLUSION

The Supplemental Disclosures provided Affymetrix shareholders with previously undisclosed material financial projections and information that allowed them to meaningfully assess the fairness of the Merger and legitimacy of Morgan Stanley's valuation analyses. The Supplemental Disclosures constituted valuable consideration to the Class in exchange for the release of purely speculative and presently unviable claims. Further, because the Court must conduct a final fairness hearing where Class members may express their views with respect to the fairness of the Settlement, granting preliminary approval of the Settlement and directing that notice be sent to the Class is warranted so long as the Settlement appears to be within the range of judicial approval. *Davis v. Brown Shoe Co.*, No. 1:13-cv-01211-LJO-BAM, 2015 U.S. Dist. LEXIS 149010, at *5 (E.D. Cal. Nov. 3, 2015). For the reasons set forth above, the Settlement is within such a range, and should be preliminarily approved by the Court.[12]

DATED: September 16, 2016                Respectfully submitted,

By:    */s/ Barbara A. Rohr*
         Barbara A. Rohr
         FARUQI & FARUQI LLP
         10866 Wilshire Blvd., Suite 1470
         Los Angeles, CA 90024
         Telephone: (424) 256-2884
         Facsimile: (424) 256-2885

---

[12]    A copy of the revised proposed preliminary approval order is attached as Exhibit F to the Rohr Decl. The revised proposed order provides that Plaintiffs' motion in support of final approval of the Settlement and an award of attorneys' fees and expenses shall be filed no later than 45 calendar days before the final approval hearing. ¶ 11.

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

James M. Wilson, Jr.
FARUQI & FARUQI LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

Juan E. Monteverde
Miles D. Schreiner
MONTEVERDE & ASSOCIATES PC
The Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY 10018
Telephone: (212) 971-1341
Facsimile: (212) 601-2610

David E. Bower
MONTEVERDE & ASSOCIATES PC
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Telephone: (310) 446-6652

*Counsel for Plaintiff Gerald Douglas*

Leigh A. Parker
WEISSLAW LLP
1516 South Bundy Drive, Suite 309
Los Angeles, CA 90025
Telephone: (310) 208-2800
Facsimile: (310) 209-2348

Richard A. Acocelli
WEISSLAW LLP
1500 Broadway 16th Floor
New York, NY 10036
Telephone: (212) 979-7109
Facsimile: (212) 682-3010

*Counsel for Plaintiff Jeffrey S. L. Cheah*

Adam McCall
LEVI & KORSINSKY LLP
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7290
Facsimile: (202) 333-2121

Donald J. Enright
LEVI & KORSINSKY LLP

16-CV-00921-WHO

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

1101 30th Street NW, Suite 115
Washington, DC 20007
Telephone:  202-524-4290
Facsimile:   202-333-2121

*Counsel for Plaintiff Steven Merola*

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF UNOPPOSED MOTION FOR
AN ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

1
2
## CERTIFICATE OF SERVICE
3
    I hereby certify that on September 16, 2016, I electronically filed the foregoing with the
4
Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-
5
mail addresses denoted on the Electronic Mail Notice List.
6
7
DATED: September 16, 2016           By: */s/ Barbara A. Rohr*
                                Barbara A. Rohr
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28