**FARUQI & FARUQI, LLP**
Barbara A. Rohr (SBN 273353)
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
Email: brohr@faruqilaw.com

*Attorneys for Plaintiff Gerald Douglas*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

<u>CLASS ACTION</u>

GERALD DOUGLAS, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

    v.

FRANK WITNEY, NELSON CHAN, GARY GUTHART, JAMI NACHTSHEIM, RICCARDO PIGLIUCCI, MERILEE RAINES, ROBERT TRICE, and AFFYMETRIX, INC.,

        Defendants.

Case No. 16-cv-00921-WHO

**NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF THE SETTLEMENT, AND AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Hon. William H. Orrick
Date: December 21, 2016
Time: 2:00 p.m.
Courtroom: 2, 17th Floor

1

STEVEN MEROLA, Individually and On Behalf of All Others Similarly Situated,

Related Case No. 4:16-cv-01237-PJH

2

Plaintiff,

3

v.

4

FRANK WITNEY, NELSON CHAN, GARY GUTHART, JAMI NACHTSHEIM, RICCARDO PIGLIUCCI, MERILEE RAINES, ROBERT TRICE, and AFFYMETRIX, INC.,

5

6

7

Defendants.

8

JEFFREY S.L. CHEAH, Individually and on Behalf of All Others Similarly Situated,

Related Case No. 3:16-cv-1253-WHO

9

10

Plaintiff,

11

v.

12

AFFYMETRIX, INC, JAMI DOVER NACHTSHEIM, FRANK WITNEY, NELSON C. CHAN, GARY S. GUTHART, RICCARDO PIGLIUCCI, MERILEE RAINES, ROBERT H. TRICE, THERMO FISHER SCIENTIFIC, INC. and WHITE BIRCH MERGER CO.,

13

14

15

16

Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION

PLEASE TAKE NOTICE that, pursuant to an Order of the Court issued on September 21, 2016 ("Preliminary Approval Order"), on December 21, 2016 at 2:00 p.m., or as soon thereafter as counsel may be heard, at the United States Court, Northern District of California, Courtroom 2, 17th Floor 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable William H. Orrick, Plaintiffs Steven Merola, Jeffrey S. L. Cheah, and Gerald Douglas ("Plaintiffs") will move pursuant to Federal Rule of Civil Procedure 23(e), for an order: (1) certifying the Class, as defined herein, for settlement purposes only, (2) granting final approval of the proposed settlement (the "Settlement"), and (3) awarding attorneys' fees and reimbursement of expenses for Plaintiffs' Counsel. Defendants have reviewed this Notice of Motion, Motion, and the accompanying Memorandum of Points and Authorities in Support thereof and have indicated that they do not intend to oppose this Motion.

The Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities in Support thereof; the Stipulation of Settlement and the exhibits filed therewith (ECF No. 38-2); the Declaration of Barbara A. Rohr in Support of Plaintiffs' Motion for Certification of the Class for Settlement Purposes, Final Approval of the Settlement, and an Award of Attorneys' Fees and Reimbursement of Expenses, dated November 7, 2016 ("Rohr Decl."), and the exhibits filed therewith; Declaration of Donald J. Enright in Support of Award of Attorneys' Fees and Reimbursement of Expenses; Declaration of Richard A. Acocelli in Support of Award of Attorneys' Fees and Reimbursement of Expenses; Declaration of Juan E. Monteverde in Support of Award of Attorneys' Fees and Reimbursement of Expenses; all other pleadings and papers filed in this action; and such matters as may be presented to the Court before or at the time of the hearing.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Settlement, on the terms and conditions provided for in the Stipulation of Settlement, dated as of July 29, 2016 (the "Stipulation"), should be finally approved by the Court as fair, reasonable, and adequate;

2.      Whether the Court should finally certify the Class and whether the Plaintiffs and their

1   counsel have adequately represented the Class; and

2        3.        Whether consideration of relevant factors justifies an award of attorneys' fees and

3   reimbursement of expenses.

4

5   DATED: November 7, 2016                          **FARUQI & FARUQI, LLP**

6                                                    By: */s/ Barbara A. Rohr*

7                                                    Barbara A. Rohr SBN 273353
                                                     **FARUQI & FARUQI, LLP**
8                                                    10866 Wilshire Boulevard, Suite 1470
                                                     Los Angeles, CA 90024
9                                                    Telephone: 424-256-2884
                                                     Facsimile: 424-256-2885
10                                                   E-mail: brohr@faruqilaw.com

11                                                   *Counsel for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF FACTS ....................................................................................5

        A.      The Merger, Litigation, Settlement Negotiations, and
                Confirmatory Discovery ...........................................................................5

        B.      Preliminary Approval and Issuance of the Notice ....................................9

III.    TERMS AND BENEFITS OF THE PROPOSED SETTLEMENT ......................10

        A.      Settlement Consideration .......................................................................10

IV.     THE SUPPLEMENTAL DISCLOSURES PROVIDED
        AFFYMETRIX SHAREHOLDERS WITH REQUIRED
        MATERIAL INFORMATION THAT WAS OMITTED
        FROM THE PROXY .............................................................................................11

        A.      The Materiality Standard ........................................................................11

        B.      Morgan Stanley's Conflict of Interest Through Significant Holdings
                in the Buyer ............................................................................................12

        C.      Affymetrix Financial Projections Disclosures Were Material ..................15

        D.      Disclosure of Morgan Stanley's Treatment of Stock-Based
                Compensation Was Material .....................................................................18

        E.      The Disclosures Regarding the Sales Process Were Material ...................20

        F.      The Disclosures Regarding Morgan Stanley's Valuations
                Were Material .........................................................................................22

V.      THE COURT SHOULD GRANT FINAL APPROVAL
        OF THE SETTLEMENT .....................................................................................24

        A.      Standards for Approval of Class Action Settlements .................................24

        B.      The Settlement Meets the Ninth Circuit Standard for Approval ................25

                1.      The Parties Were Able to Assess the Strengths and
                        Weaknesses of Their Cases ...........................................................25

                2.      The Settlement Appropriately Balances the Risks of
                        Litigation and the Benefit to the Class of a Certain Remedy ...........26

                3.      Reaction of the Class Supports Approval of the Settlement .............33

                4.      The Consideration Offered in Settlement .......................................34

5.     The Proposed Settlement Resulted from Arms' Length Negotiations and Did Not Involve Any Collusion .........................34

VI.    **CERTIFICATION OF THE SETTLEMENT CLASS UNDER RULE 23 IS APPROPRIATE** ........................................................**35**

    A.    The Settlement Class Members Are So Numerous that Joinder Is Impracticable ........................................................35

    B.    Common Questions of Law or Fact Exist........................................36

    C.    Plaintiffs' Claims are Typical of Those of the Settlement Class.................36

    D.    Plaintiffs Are Adequate Representatives of the Settlement Class ...............37

    E.    The Requirements of Rule 23(b) Are Also Satisfied....................................37

VII.   **THE COURT SHOULD GRANT PLAINTIFFS' COUNSEL'S REQUEST FOR REASONABLE ATTORNEYS' FEES AND EXPENSES** ..............................**39**

    A.    The Applicable Legal Standard ..................................................39

    B.    Plaintiffs' Counsel's Lodestar and an Appropriate Multiplier Support the Requested Fee Award ................................................40

    C.    Fee Awards in Similar Cases ....................................................42

VIII.  **CONCLUSION**...............................................................**44**

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

Alberto v. GMRI, Inc.,
  2008 U.S. Dist. LEXIS 91691 (E.D. Cal. Nov. 12, 2008) ....................................34

Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores,
  54 F.3d 69 (2d Cir. 1995) ....................................................................................40

Amchem Prods., Inc. v. Windsor,
  521 U.S. 591 (1997) ..............................................................................................37

In re Applied Micro Circuits Corp. Secs. Litig.,
  2003 U.S. Dist. LEXIS 14492 (S.D. Cal. July 10, 2003) .....................................35

Aron v. Crestwood Midstream Partners LP,
  No. 4:15-CV-1367, 2016 U.S. Dist. LEXIS 152427 (S.D. Tex. Oct. 14, 2016) ...............3, 28

Basic Inc. v. Levinson,
  485 U.S. 224 (1988) ..............................................................................................11

Bell Atl. Corp. v. Bolger,
  2 F.3d 1304 (3d Cir. 1993) ...................................................................................27

Bellows v. NCO Fin. Sys.,
  2008 U.S. Dist. LEXIS 103525 (S.D. Cal. Dec. 2, 2008) .....................................34

Birnbaum v. Newport Steel Corp,
  193 F.2d 461 (2d Cir.) ..........................................................................................33

Biver v. Nicholas Fin., Inc.,
  No. 8:14-cv-250-T-33TGW, 2014 U.S. Dist. LEXIS 73933 (M.D. Fla. May 30, 2014) ........19

Blue Chip Stamps v. Manor Drug Stores,
  421 U.S. 723 (1975) ..............................................................................................33

Blum v. Stenson,
  465 U.S. 886, 895, 104 S. Ct. 1541, 1547 (1984) ................................................41

Brown v. Brewer, No. CV 06-3731-GHK (SHx),
  2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010) .....................................15

In re China Intelligent Lighting & Elecs., Inc. Sec. Litig., No. CV 11-2768 PSG (SSx),
  2013 U.S. Dist. LEXIS 155091 (C.D. Cal. Oct. 25, 2013) ...................................38

28

PLAINTIFFS' NOTICE OF MOTION, MOTION,
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT; CASE: 16-CV-00921
-- -- --

iii

Collier v. BrightPoint, Inc.,
    No. 1:12-cv-1016-TWP-DKL, 2013 U.S. Dist. LEXIS 23616 (S.D. Ind. Feb. 21, 2013) ........4

DeHoyos v. Allstate Corp.,
    240 F.R.D. 269 (W.D. Tex. 2007) ...................................................................................44

DeMaria v. Andersen,
    318 F.3d 170 (2d Cir. 2003) ...........................................................................................31

In re Dell Inc., Sec. Litig.,
    591 F. Supp. 2d 877 (W.D. Tex. 2008) ...........................................................................28

Dura Pharms., Inc. v. Broudo,
    544 U.S. 336 (2005)........................................................................................................32

Evans v. Jeff D.,
    475 U.S. 717 (1986)........................................................................................................24

First State Orthopaedics v. Concentra, Inc.,
    534 F. Supp. 2d 500 (E.D. Pa. 2007)..............................................................................28

Folger Adam Co. v. PMI Indus., Inc.,
    938 F.2d 1529 (2d Cir. 1991) ...................................................................................11, 14

Garza v. Sporting Goods Props.,
    No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009 (W.D. Tex. Feb. 6, 1996) ....................42

Gen. Tel. Co. of Southwest v. Falcon,
    457 U.S. 147 (1982)........................................................................................................37

Girsh v. Jepson,
    521 F.2d 153 (3d Cir. 1975) ...........................................................................................26

Gustafson v. Alloyd Co.,
    513 U.S. 561 (1995)........................................................................................................32

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir. 1998) ..................................................................................passim

Hardisty v. Astrue,
    592 F.3d 1072 (9th Cir. 2010) ........................................................................................39

Hensley v. Eckerhart,
    461 U.S. 424 (1983)........................................................................................................39

*In re Heritage Bond Litig.*,
    2004 U.S. Dist. LEXIS 15386 (C.D. Cal. July 12, 2004).........................................................36

*Heritage Bond Litig.*,
    2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ...........................................34

*Hertzberg v. Dignity Partners, Inc.*,
    191 F.3d 1076 (9th Cir. 1999) ................................................................................32

*Huddleston v. Herman & MacLean*,
    640 F.2d 534 (5th Cir. 1981) ..................................................................................12

*In re Ins. Brokerage Antitrust Litig.*,
    MDL No. 1663, 2007 U.S. Dist. LEXIS 11163 (D.N.J. Feb. 16, 2007) .................................33

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964)..................................................................................................2

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.),*
    654 F.3d 935 (9th Cir. Cal. 2011).........................................................................41, 42

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ....................................................................................40

*Koppel v. Wien*,
    743 F.2d 129 (2d Cir. 1984) ...................................................................................27

*Kramas v. Sec. Gas & Oil Inc.*,
    672 F.2d 766 (9th Cir. 1982) ..................................................................................11

*Lewis v. Newman*,
    59 F.R.D. 525 (S.D.N.Y. 1973) ..............................................................................27

*Linney v. Cellular Alaska P'ship*,
    1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997).........................................25

*Litwin v. Blackstone Grp., L.P.*,
    634 F.3d 706 (2d Cir. 2011) ...................................................................................17

*Lone Star Steakhouse & Saloon, Inc. v. Adams*,
    148 F. Supp. 2d 1141 (D. Kan. 2001)........................................................................4

*Lundell v. Dell, Inc.*,
    No. 05-3970, 2006 U.S. Dist. LEXIS 90990 (N.D. Cal. Dec. 4, 2006)....................26

In re Mego Fin. Corp. Sec. Litig.,
213 F.3d 454 (9th Cir. 2000) ................................................................24, 26

Mills v. Elec. Auto-Lite Co.,
396 U.S. 375 (1970)................................................................................26, 40

Moore v. Verizon Commc'ns, Inc., No. C 09-1823 SBA,
2013 U.S. Dist. LEXIS 15609 (N.D. Cal. Feb. 5, 2013) ......................44

Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,
221 F.R.D. 523 (C.D. Cal. 2004)........................................................27, 33

In re Nationwide Fin. Servs. Litig.,
No.: 2:08-CV-00249, 2009 U.S. Dist. LEXIS 126962 (S.D. Ohio Aug. 18, 2009) ...............39

Newman v. Stein,
464 F.2d 689 (2d Cir. 1972) ................................................................25

Officers for Justice v. Civil Serv. Comm'n,
688 F.2d 615 (9th Cir. 1982) ................................................................24

In re Omnivision Tech., Inc.,
559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................................24

Pawlak v. Greenawalt,
713 F.2d 972 (3d Cir. 1983) ................................................................40

Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Stumpf,
2012 U.S. Dist. LEXIS 16066 (N.D. Cal. Feb. 8, 2012) ......................3

Polaroid Corp. v. Disney,
862 F.2d 987 (3rd Cir. 1988)................................................................4

In re Pool Prods. Distrib. Mkt. Antitrust Litig.,
MDL No. 2328, 2015 U.S. Dist. LEXIS 97578 (E.D. La. July 27, 2015)..........................33

In re Prudential Secs. Inc. P'ships Litig.,
930 F. Supp. 68 (S.D.N.Y. 1996) ........................................................13

Reed v. Gen. Motors Corp.,
703 F.2d at 170, 172 (5th Cir. 1983) ................................................28

Republic Nat'l Life Ins. Co. v. Beasley,
73 F.R.D. 658 (S.D.N.Y. 1977) ........................................................27

Ressler v. Jacobson,
   149 F.R.D. 651 (M.D. Fla. 1992) ...........................................................................41

Rodriguez v. Carlson,
   166 F.R.D. 465 (E.D. Wash. 1996) ........................................................................36

Rodriguez v. Countrywide Home Loans, Inc.,
   695 F.3d 360 (5th Cir. 2012) ..................................................................................39

Rombach v. Chang,
   355 F.3d 164 (2d Cir. 2004) ...................................................................................12

Santa Fe Indus. v. Green,
   430 U.S. 462 (1977)..................................................................................................2

Schaefer v. Overland Express Family of Funds,
   169 F.R.D. 124 (S.D. Cal. 1996) ............................................................................37

In re Schering-Plough/Merck Merger Litig.,
   No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121 D.N.J. Mar. 25, 2010)............passim

Schulein v. Petroleum Dev. Corp., No. SACV 11-1891 AG (ANx),
   2014 U.S. Dist. LEXIS 71236 (C.D. Cal. May 19, 2014) ......................................15

In re Skilled Healthcare Group, Inc.,
   No. 09-5416, 2011 U.S. Dist. LEXIS 10139 (C.D. Cal. Jan. 26, 2011).................34

Smith v. Robbins & Myers, Inc.,
   969 F. Supp. 2d 850 (S.D. Ohio 2013) ......................................................15, 16, 19

Spencer v. Comserv Corp.,
   No. 4-84-794, 1986 U.S. Dist. LEXIS 15863 (D. Minn. Dec. 30, 1986) ...............41

St. Louis Police Ret. Sys. v. Severson,
   No. 12-CV-5086-YGR, 2012 U.S. Dist. LEXIS 152392 (N.D. Cal. Oct. 23, 2012)................4

TSC Indus. v. Northway, Inc.,
   426 U.S. 438 (1976)................................................................................................11

Torrisi v. Tucson Elec. Power Co.,
   8 F.3d 1370 (9th Cir. 1993) ....................................................................................24

Van Bonkhorst v. Safeco Corp.,
   529 F.2d 943 (9th Cir. 1976) ..................................................................................25

Wal-Mart Stores, Inc. v. Dukes,
　　131 S. Ct. 2541 (2011)..................................................................................................38

Weiss v. Amkor Tech., Inc.,
　　527 F. Supp. 2d 938 (D. Ariz. 2007) ...........................................................................32

Yeung Chan v. Diamond,
　　No. 03 Civ. 8494 (WHP), 2005 U.S. Dist. LEXIS 6939 (S.D.N.Y. Apr. 25, 2005) ..............27

**STATE CASES**

In re Atheros Communs., Inc. S'holder Litig.,
　　2011 Del. Ch. LEXIS 36 (Del. Ch. Mar. 4, 2011)....................................................21

In re BioClinica, Inc. S'holder Litig.,
　　No. 8272-VCG, 2013 Del. Ch. LEXIS 52 (Del. Ch. Feb. 25, 2013)......................................15

In re Celera Corp. S'holder Litig.,
　　No. 6304-VCP, 2012 Del. Ch. LEXIS 66 (Del. Ch. Mar. 23, 2012)......................................19

Corwin v. KKR Fin. Holdings LLC,
　　125 A.3d 304 (Del. 2015) ...............................................................................................2

David P. Simonetti Rollover ISA v. Margolis,
　　No. 3694-VCN, 2008 Del. Ch. LEXIS 78 (Del. Ch. June 28, 2008) .....................................14

In re Del Monte Foods Co. S'holders Litig.,
　　25 A.3d 813(Del. Ch. 2011) .............................................................................................14

Gantler v. Stephens,
　　965 A.2d 695 (Del. 2009) ................................................................................................22

Helaba Invest Kapitalanlagegesellschaft mbH,
　　2008 Del. Ch. LEXIS 155 (Del. Ch. Apr. 11, 2008) ..............................................................15

In re John Q. Hammons Hotels Inc. S'holder Litig.,
　　No. 758-CC, 2009 Del. Ch. LEXIS 174 (Del. Ch. Oct. 2, 2009) ....................................passim

Laborers Local 235 Benefit Funds v. Starent Networks, Corp.,
　　No. 5002, 2009 Del. Ch. LEXIS 210 (Del. Ch. Nov. 18, 2009).......................................19, 23

Latesco, L.P. v. Wayport, Inc.,
　　No. 4167-VCL, 2009 Del. Ch. LEXIS 145 (Del. Ch. July 24, 2009)....................................31

Lealao v. beneficial Cal., Inc.,
　　82 Cal. App. 4th 19 (2000) ..............................................................................................42

In re Lear Corp. S'holder Litig.,
    926 A.2d 94 (Del. Ch. 2007) ................................................................................14

Lewis v. Anderson,
    477 A.2d 1040 (1984) .........................................................................................29

In re MONY Grp. Inc. S'holder Litig.,
    852 A.2d 9 (Del. Ch. 2004) ................................................................................22

Malpiede v. Townson,
    780 A.2d 1075 (Del. 2001)) ...................................................................................2

McDonough v. Horizon Blue Cross Blue Shield of N.J.,
    641 App'x 146 (3d Cir. 2015) .............................................................................27

In re Netsmart Techs., Inc. S'holders Litig.,
    924 A.2d 171 (C.D. Cal. June 17, 2010) .......................................................15, 23

In re PNB Holding Co. S'holders Litig.,
    No. 28-N, 2006 Del. Ch. LEXIS 158 (Del. Ch. Aug. 18, 2006) ............................15

In re Staples Inc. S'holders Litig.,
    792 A.2d 934 (Del. Ch. 2001) ............................................................................15

In re Talley Indus., Inc. Shareholders Litig.,
    No. 15961, 1998 Del. Ch. LEXIS 53 (Del. Ch. Apr. 9, 1998) ...............................3

In re Volcano Corp. Stockholder Litig.,
    No. 10485-VCMR, 2016 Del. Ch. LEXIS 99, Larkin v. Shah, No. 10918-V 2016 Del.
    Ch. LEXIS 134 (Del. Ch. Aug. 25, 2016) ...........................................................31

Wershba v. Apple Computer, Inc.,
    91 Cal. App. 4th, 224 (2001) .............................................................................42

## DOCKETED CASES

In re AMC Entm't, Inc. S'holder Litig.,
    No. 04-CV-220931 (Jackson Cnty. Mo. Dec. 2, 2005) ..........................................44

Cooke v. Equal Energy Ltd.,
    No. 5:14-cv-00087-C, Fed. Court Order and Final J. (W.D. Okla. Apr. 8, 2015)...................4

In re Covidien PLC Sec. Litig.,
    No. 1:14-cv-12949-LTS, Order and Final J. (D. Mass. Sept. 23, 2015) ..................4

1

*In re Crestwood Midstream Partners Unitholder Litig.*,
 No. 4:13-cv-01528, 2016 U.S. Dist. LEXIS 152427 (S.D. Tex. Oct. 14, 2016) ......................3

2

3

*Cty. Of York Emps. Ret. Plan v. Merrill Lynch & Co., Inc.*,
 No. 4066-VCN (Del. Ch. Aug. 31, 2009) ................................................................43

4

*Halliday v. Gymboree Corp.*,
 No. CGC-10-504544 (San Francisco Super. Ct. Dec. 16, 2011) ............................43

5

6

*Henkel v. Battista*,
 No. 3419-VCN (Del. Ch. Dec. 16, 2008) ................................................................43

7

8

*Himmel v. Sherman*,
 No. 1016-CV-24783 (Jackson Cnty. Mo. June 2, 2011) ........................................43

9

10

*IBEW Local 164 Pension Fund v. Hewitt Assocs., Inc.*,
 No. 10 CH 31612 (Cook Cty. Ill. Cir. Ct. Feb. 15, 2011) .....................................43

11

*Lambert v. Tellabs, Inc.*,
 No. 1:13-cv-07945 (N.D. Ill. Sept. 11, 2015) ........................................................42

12

13

*In re Leap Wireless Int'l, Inc. S'holder Litig.*,
 Lead Case No. 37-2013-00058491-CU-BT-CTL
 (San Diego Super. Ct. Oct. 29, 2014) .............................................................. 42- 43

14

15

*Nichting v. DPL Inc.*,
 No. 3:11-cv-141, Order and Final J. 7 (S.D. Ohio Feb. 24, 2012) ........................43

16

17

*Singh v. Attenborough*,
 No. 645, 2015, 2016 Del. LEXIS 276 (Del. May 6, 2016) ....................................31

18

19

*Stein v. Pactiv Corp.*,
 No. 10-CH-35455 (Cook Cty. Il. Cir. Ct. Apr. 28, 2011) .....................................43

20

**FEDERAL STATUTES**

21

42 U.S.C. § 1997e(d)(1) ............................................................................................39

22

17 C.F.R. § 240.10b-5 ...............................................................................................33

23

24

17 C.F.R. § 244.100 ............................................................................................12, 16

25

Fed. R. Civ. P. 23(a)(2) .............................................................................................36

26

27

28

## I.   INTRODUCTION[1]

Gerald Douglas, Steven Merola and Jeffrey S.L. Cheah (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class[2], submit this memorandum of points and authorities in support of final approval of the Settlement, as set forth in the Stipulation of Settlement dated July 29, 2016 and as preliminarily approved by this Court on September 21, 2016, and respectfully request that the Court: (i) grant final approval of the Settlement set forth in the Stipulation of Settlement; (ii) grant final certification of a non-opt-out class consisting of all record holders and beneficial owners of Affymetrix common stock at any time during the period beginning on and including August 12, 2015 through and including March 31, 2016; and (iii) grant Plaintiffs' request for an award of attorneys' fees and expenses, which is unopposed by Defendants.

The Settlement is the product of a concerted effort by Plaintiffs and Plaintiffs' Counsel to provide for certain supplemental disclosures regarding the Merger with Thermo Fisher to ensure that Affymetrix shareholders were not forced to vote on the Merger or make an appraisal decision based on a materially incomplete and misleading proxy statement.  The Settlement was achieved only after hard-fought litigation and extensive efforts by Plaintiffs' Counsel.  Over the course of the litigation, Plaintiffs' Counsel, in an accelerated time frame, conducted an extensive investigation of the claims asserted, including the review of non-public discovery, consultation with financial experts and the depositions of key witnesses.  The corrective disclosures, which are

---

[1]   Although Defendants deny any wrongdoing whatsoever, and do not admit or agree that their clients engaged in any improper actions or that any of the alleged misstatements or omissions were material, this Motion is unopposed by Defendants in that they do not oppose the granting of any of the relief requested herein. This Memorandum of Points and Authorities is submitted solely by Plaintiffs and does not in all instances represent the views of Defendants.

[2]   Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulation of Settlement, attached as Exhibit 1 to the Declaration of Barbara A. Rohr in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement (Dkt. No. 38-1) (the "Stipulation"). The Settlement Class stipulated to by the Parties and preliminarily certified by the Court is defined as all record holders and beneficial owners of Affymetrix common stock at any time during the period beginning on and including August 12, 2015 through and including March 31, 2016, the date of the consummation of the Merger, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them.

discussed in more detail below and attached as Exhibit A to the Stipulation, included highly material information concerning the process to sell Affymetrix and the Company's internal projected financial metrics that were expressly relied upon by the Defendants to recommend that Affymetrix shareholders vote for the Merger, and by the Company's financial advisor to prepare and render its opinion that the Merger consideration was fair to the Company's shareholders. *See* Stipulation, Ex. A; *see also* affidavit of M. Travis Keath ("Keath Aff.").[3]

These disclosures, required under Regulations promulgated by the Securities and Exchange Commission ("SEC") and/or to correct other materially misleading and incomplete statements in the Proxy, remedied  Defendants' violations of Section 14(a) of the Exchange Act,[4] an act that is expressly designed "to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation," and "stemmed from the congressional belief that fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange." *J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964) (internal quotation marks omitted).  This information was material because Affymetrix shareholders were entitled to know whether Affymetrix's Board of Directors (the "Board") adequately discharged its fiduciary duties owed to the Company's shareholders, including whether it took all steps to secure the highest price possible and whether it was satisfying its duty of candor.

---

[3]     Attached as Exhibit 6 to the Declaration of Barbara A. Rohr in Support of Plaintiffs' Unopposed Motion for Certification of the Class for Settlement Purposes, Final Approval of the Settlement, and an Award of Attorneys' Fees and Reimbursement of Expenses, dated November 7, 2016 ("Rohr Decl.").

[4]     Plaintiffs thoroughly investigated the state law claims for breach of fiduciary duty after obtaining the additional disclosures pursuant to the terms of the Memorandum of Understanding ("MOU"), and have concluded that those claims have been rendered unviable in light of Affymetrix's shareholders' vote approving the Merger after the Supplemental Disclosures were made.  That vote lowered the applicable standard of review of the Board's actions from a heightened "enhanced scrutiny" standard to the much lower and irrebutable "business judgment" standard. *See Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304, 314 (Del. 2015) ("[W]here the stockholders have had the voluntary choice to accept or reject a transaction, the business judgment rule standard of review is the presumptively correct one. . . .").  Because a majority of Affymetrix's shareholders have spoken, and decided to accept the Merger consideration, Plaintiffs' allegations that the Merger consideration was inadequate are largely irrelevant to the Court's analysis of the Settlement. *See id*; *see also Santa Fe Indus. v. Green*, 430 U.S. 462, 478 (1977) (explaining that with respect to claims under the Exchange Act, "once full and fair disclosure has occurred, the fairness of the terms of the transaction is at most a tangential concern of the statute.").

1    Through the Settlement, Plaintiffs ensured that Affymetrix's former shareholders had these

2    corrective disclosures at their disposal at the time of making the momentous decision on the fate of

3    the Company's independent existence.   The courts of California and Delaware, where similar

4    actions are often litigated, have recognized that it is a fundamental tenet of corporate law that

5    shareholders are entitled to be fully informed of all material facts concerning transactions requiring

6    their approval.  *See, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Stumpf*, 2012

7    U.S. Dist. LEXIS 16066 (N.D. Cal. Feb. 8, 2012) (quoting *Malpiede v. Townson*, 780 A.2d 1075,

8    1086 (Del. 2001)) ("When issuing a proxy statement, 'the board is obligated to disclose fully and

9    fairly all material information within the board's control.'").  Indeed, disclosure of information that

10   informs a shareholder's decision about whether to vote in favor of a corporate takeover has been

11   held to be even more important than monetary relief:

12           [T]he timely disclosure of the information in the supplement was presumably of
             greater value to the class than any potential award of damages based on the failure to
13           disclose the same information, as such information is of the greatest utility when it is
             available in a timely manner to inform the stockholders' decision making process.
14

15   *In re Talley Indus., Inc. Shareholders Litig.*, No. 15961, 1998 Del. Ch. LEXIS 53, at *46 (Del. Ch.

16   Apr. 9, 1998).

17           Since Section 14(a)'s "fundamental purpose" is to require "full disclosure," *Santa Fe Indus.*,

18   430 U.S. at 478, courts have consistently approved settlements similar to the present one, where

19   corporations and directors agree to provide shareholders with previously withheld material

20   information concerning a corporate transaction in exchange for a release of certain fiduciary duty

21   and federal securities law claims related to the transaction.  *See e.g., In re Schering-Plough/Merck*

22   *Merger Litig.*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *48-49 (D.N.J. Mar. 25,

23   2010) (approving settlement where "the supplemental disclosures facilitated communication and

24   informed shareholders of previously undisclosed material information permitting shareholders to

25   exercise their voting rights accordingly."); *Aron v. Crestwood Midstream Partners LP*, No. 4:15-

26   CV-1367, 2016 U.S. Dist. LEXIS 152427, *13 (S.D. Tex. Oct. 14, 2016) (approving settlement

27   which "resulted in financial disclosures to Midstream shareholders prior to a vote on the

28

1  merger…"); *Collier v. BrightPoint, Inc.*, No. 1:12-cv-1016-TWP-DKL, 2013 U.S. Dist. LEXIS

2  23616, at *3 (S.D. Ind. Feb. 21, 2013) (approving settlement that "compel[led] Defendants to make

3  certain disclosures to Defendants' shareholders."); *In re Crestwood Midstream Partners Unitholder*

4  *Litig.*, No. 4:13-cv-01528, Order and Final J., (S.D. Tex. May 16, 2014) (same);[5] *In re Covidien*

5  *PLC Sec. Litig.*, No. 1:14-cv-12949-LTS, Order and Final J. (D. Mass. Sept. 23, 2015) (same);[6]

6  *Cooke v. Equal Energy Ltd.*, No. 5:14-cv-00087-C, Fed. Court Order and Final J. (W.D. Okla. Apr.

7  8, 2015) (same).[7]

8  As explained below, and supported by the affidavit of Plaintiffs' financial expert M. Travis

9  Keath, the corrective disclosures procured as a result of the Settlement were required and material

10  to Affymetrix shareholders in connection with their decision concerning whether or not to vote to

11  approve the Merger or exercise their appraisal rights.  Conversely, the Released Claims, limited

12  solely to those claims related to the Transaction possessed by the Settlement Class members only

13  "in their capacity as shareholders of Affymetrix," are no longer viable.  Indeed, the material

14  information Plaintiffs obtained for the Class prior to the crucial shareholder vote preserved

15  shareholders' invaluable corporate suffrage rights, rights that cannot readily be restored through

16  monetary damages.  *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1149-50

17  (D. Kan. 2001); *St. Louis Police Ret. Sys. v. Severson*, No. 12-CV-5086-YGR, 2012 U.S. Dist.

18  LEXIS 152392, at *16 (N.D. Cal. Oct. 23, 2012) ("[D]isclosure deficiencies cannot be remedied

19  effectively by an after-the-fact damages case") (internal quotation marks omitted).[8]

20  Plaintiffs' Counsel, all of whom are highly experienced in prosecuting shareholder class

21

22  [5]   Attached as Exhibit 8 to Rohr Decl.

23  [6]   Attached as Exhibit 9 to Rohr Decl.

24  [7]   Attached as Exhibit 10 to Rohr Decl.

25  [8]   *See also Polaroid Corp. v. Disney*, 862 F.2d 987, 1006 (3rd Cir. 1988) ("While Congress has
   determined that accurate disclosure is important to shareholders, it would often be impossible for
26  shareholders to prove that on the facts of their particular tender offer accurate disclosure would have
   affected their decision making in a particular way with concomitant quantifiable monetary loss. The
27  inadequacy of a remedy at law and the importance that Congress has attached to accurate disclosure
   of material information establishes irreparable harm.").

28

actions[9], have concluded that the Settlement achieves all of the goals of the Actions and, therefore, is the best possible result for members of the Settlement Class.  The reaction of the Settlement Class supports this conclusion.  Although the November 28, 2016 deadline to object has not passed, as of the date of this filing, ***there has not been a single objection*** to the Settlement or the requested attorneys' fees and expenses.  For these reasons, and as more fully set forth below, Plaintiffs respectfully request that the Court grant final approval of the Settlement, certify the Settlement Class, approve the requested fees and expenses award, and enter the proposed Final Order and Judgment.[10]

## II.   STATEMENT OF FACTS

### A.   The Merger, Litigation, Settlement Negotiations, and Confirmatory Discovery

On January 8, 2016, Affymetrix and Thermo Fisher entered the Merger Agreement pursuant to which Thermo Fisher would acquire all outstanding shares of Affymetrix, through White Birch Merger Co., and, in return, Affymetrix shareholders would receive $14.00 in cash for each share of Affymetrix they owned (the "Merger").

On January 19, 2016, Mr. Steven Merola ("Merola") filed the *Merola* Action against Defendants challenging the Merger on behalf of a putative class of public shareholders of Affymetrix.

On January 20, 2016, Ms. Betty Greenberg ("Greenberg") filed a related putative class action (the *Greenberg* Action) against the same Defendants on behalf of the same putative class.

On January 26, 2016, Mr. Jeffrey S. L. Cheah ("Cheah") filed a related putative class action (the *Cheah* Action) against the same Defendants on behalf of the same putative class.

On January 27, 2016, Mr. Robert Cox ("Cox") filed a related putative class action (the *Cox* Action) against the same Defendants on behalf of the same putative class.

---

[9]      *See* Firm Resumes attached as Exs. 1, 2-A, 3-A, 4-A to Rohr. Decl.

[10]     A copy of the [Proposed] Final Order and Judgment was attached as Exhibit D to the Stipulation (ECF No. 38-2).

1   On February 3, 2016, Affymetrix filed a preliminary proxy statement on Schedule 14A (the

2   "Preliminary Proxy") with the SEC describing the terms of the Merger.

3   On February 18, 2016, Cheah filed an amended complaint alleging, among other things, that

4   the Board breached its fiduciary duties to the Company's public stockholders in negotiating and

5   approving the Merger Agreement by failing to maximize shareholder value and failing to disclose

6   all material information concerning the Merger, and that the other Defendants aided and abetted the

7   alleged breaches of fiduciary duty and seeking, among other things, an injunction enjoining the

8   consummation of the Merger.

9   All of the foregoing actions were filed in the Superior Court of the State of California for the

10  County of Santa Clara ("Superior Court").

11  On February 24, 2016, Mr. Gerald Douglas filed a related putative class action in this Court

12  (the *Douglas* Action) against many of the same Defendants[11] on behalf of the same putative class.

13  On February 24, 2016, Affymetrix filed with the SEC a definitive proxy statement ("Proxy")

14  disclosing, among other things, the Affymetrix Board of Directors' (the "Board") unanimous

15  recommendation that Affymetrix shareholders vote for the adoption of the Merger Agreement, that

16  the shareholder vote would take place on March 24, 2016, unless delayed, and certain information

17  supporting the Board's recommendation.

18  On February 26, 2016, Merola and Cheah and Defendants executed a stipulated, proposed

19  confidentiality order that was filed that day and entered by the Superior Court on March 3, 2016.

20  Also on February 26, 2016, Defendants voluntarily produced documents to counsel for

21  Plaintiffs in the *Merola* Action and *Cheah* Action, consisting of (a) confidential presentations

22  prepared by Affymetrix's financial advisor that were delivered to Affymetrix's board of directors

23  between August 2015 and January 2016 with respect to the Proposed Transaction, (b) minutes of

24  board of directors meetings between August 2015 and January 2016 with respect to the transaction,

25  and (c) confidential presentations delivered by members of Affymetrix management to potential

26  ─────────────

27  [11]    The *Douglas* Action does not name Thermo Fisher or White Birch Merger Co. as defendants.

28

bidders with respect to the transaction, and presentations that included management's financial projections for Affymetrix's business.

On March 9, 2016, after Plaintiffs' counsel made a discovery demand, Defendants produced the same documents to counsel for Plaintiff in the *Douglas* Action.

In the same approximate time-frame, and subject to confidentiality agreements,  Defendants voluntarily provided documentary and deposition discovery to plaintiffs in the *Greenberg* and *Cox* actions, both of whom subsequently dismissed their actions voluntarily and without receipt of any compensation or other consideration.

On March 10, 2016, Plaintiffs in the *Merola* Action and *Cheah* Action sent to counsel for Affymetrix a letter demanding that Affymetrix make certain further disclosures to shareholders prior to the shareholder vote.

On March 11, 2016, after reviewing the discovery, Plaintiff in the *Douglas* Action sent to counsel for Defendants a similar letter demanding that Affymetrix take certain actions, including making certain further disclosures to shareholders, prior to the shareholder vote.

During this period, counsel to the Parties had a series of good faith and arm's-length discussions about the terms and conditions of a potential resolution of the Actions in which Affymetrix would agree to make certain additional disclosures regarding the Merger Agreement (the "Supplemental Disclosures") as part of a supplement to the Proxy.

On March 14, 2016, Merola voluntarily withdrew the *Merola* Action previously filed in Superior Court, and filed the Second *Merola* Action in this Court alleging, among other things, that the Board breached its fiduciary duties to the Company's public stockholders in negotiating and approving the Merger Agreement by failing to maximize shareholder value and failing to disclose all material information concerning the Merger, and that the other Defendants aided and abetted the alleged breaches of fiduciary duty and seeking, among other things, an injunction enjoining the consummation of the proposed Merger.

On March 14, 2016, Cheah filed the Second *Cheah* Action in this Court alleging, among other things, that the Board breached its fiduciary duties to the Company's public stockholders in

negotiating and approving the Merger Agreement by failing to maximize shareholder value and failing to disclose all material information concerning the Merger, and that the other Defendants aided and abetted the alleged breaches of fiduciary duty and seeking, among other things, an injunction enjoining the consummation of the proposed Merger.   On March 16, 2016, Cheah withdrew the *Cheah* Action previously filed in the Superior Court.

On March 15, 2016, following further negotiations, counsel for the Parties reached an agreement in principle providing for the settlement of the Actions and  executed a Memorandum of Understanding ("MOU") setting forth the key terms of the Settlement, subject to confirmatory discovery among other conditions, including an agreement by the Defendants that Affymetrix would promptly make certain additional disclosures about the transaction that would be filed that same day (the "Proxy Supplement").  The Proxy Supplement was filed accordingly.

Between March 18 and March 22, 2016, Origin Technologies Corporation, LLC ("Origin") made putative proposals to acquire Affymetrix at a price above $14.00 per share.  On March 23, 2016, Affymetrix delayed the shareholder vote on the Transaction until March 31, 2016.

The Affymetrix Board engaged in discussions with Origin between March 23 and March 28, 2016.  On March 28, 2016, Origin withdrew its offer to acquire Affymetrix.  These developments were described by Affymetrix in public filings with the SEC on March 21, 2016, March 24, 2016, and March 29, 2016.

On March 25, 2016, Plaintiffs sent a detailed request for confirmatory discovery on numerous topics concerning the Affymetrix Board's consideration and negotiation of the Merger and seeking numerous categories of documents including, among other things, copies of Board minutes, financial presentations, diligence presentations, drafts of the Merger Agreement, and documents regarding the Origin proposals.

Between March 31 and June 2, 2016, Defendants produced over 5,500 pages of additional confidential documents responsive to Plaintiffs' requests, including additional board presentations, board meeting minutes, and email correspondence, as well as copies of transcripts from the two depositions taken in the *Cox* Action and *Greenberg* Action.  In addition, Plaintiffs took the

1   following depositions: (i) Affymetrix's Board Chair at the time of the Merger (May 10, 2016); (ii)

2   Affymetrix's CEO at the time of the Merger (May 19, 2016); and (iii) a managing director of

3   Affymetrix's financial advisor in connection with the Merger, Morgan Stanley (June 2, 2016).[12]

4         By Order dated July 14, 2016, all three pending actions were related by this Court.

5         After reaching an agreement in principle regarding the relief to the Settlement Class, the

6   parties began preparing the settlement documents, including the stipulation of settlement, the class

7   notice, the summary notice, and the proposed orders granting final approval and entering final

8   judgment.  Over the next several weeks, the parties exchanged drafts of the settlement documents.

9   The parties finalized and executed the Stipulation of Settlement on July 29, 2016.

10        **B.     Preliminary Approval and Issuance of the Notice**

11        On July 29, 2016, Plaintiffs filed their Motion for Preliminary Approval, requesting that the

12   Court enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice

13   ("Scheduling Order"): (i) granting preliminary approval of the proposed Settlement; (ii) granting

14   provisional certification of the Settlement Class for the purposes of settlement; (iii) approving the

15   proposed form of notice and directing dissemination of notice to the Settlement Class; (iv)

16   scheduling a date for the Settlement Hearing; and (v) such other and further relief as the Court

17   deemed just and proper.  After supplemental briefing was submitted at the Court's direction, the

18   Court granted the motion on September 21, 2016, directed Notice be sent to the Settlement Class,

19   and scheduled a Settlement Hearing for December 21, 2016 (ECF No. 50)  Pursuant to the Court's

20   Preliminary Approval Order, Notice to registered holders and brokers was mailed out to the

21   Settlement Class by Kurtzman Carson Consultants, a notice administrator hired by Defendants,

22   beginning on October 7, 2016.  Since October 7, 2016, Notice has been mailed to beneficial

23   shareholders as requested by brokers and will continue to be mailed as requests are received.[13]

24

25   [12]      On March 31, 2016, the Merger was completed and Affymetrix became a wholly-owned subsidiary of Thermo Fisher.

26   [13]      The affidavit of proof of mailing with respect to the Notice is due to be filed with the Court
27   no later than seven (7) calendar days before the December 21, 2016 Settlement Hearing. Preliminary Approval Order at ¶ 6.

28

1   The Notice clearly and concisely described, in plain and easily understood language, the

2   nature of the Actions and the claims alleged in the Actions, the definition of the Settlement Class,

3   the terms of the proposed Settlement, including payment of Plaintiffs' attorneys' fees and litigation

4   expenses, and the reasons for the Settlement.   In addition, the Notice explained that any Class

5   member who so desired could enter an appearance through an attorney and the process by which

6   Class members could object to the Settlement.

7   Although the November 28, 2016 deadline for objections has not yet passed, as of the date

8   of this filing not a single objection has been received to any of the terms of the Settlement, or

9   requested fees and expenses.   Plaintiffs submit that this is evidence of the proposed Settlement's

10   fairness and adequacy, particularly given the comprehensive Notice provided to Affymetrix

11   shareholders.

12   **III.   TERMS AND BENEFITS OF THE PROPOSED SETTLEMENT**

13   **A.   Settlement Consideration**

14   The complaints alleged that Defendants failed to disclose all material facts regarding the

15   sales process undertaken by the Board and critical financial data relied on by the Board to approve

16   the Merger and utilized by its financial advisor, Morgan Stanley, to render its fairness opinion

17   regarding the Merger.   As a direct result of Plaintiffs' prosecution[14] of the class claims, Defendants

18   agreed to distribute to Affymetrix shareholders the Supplemental Disclosures in a Proxy

19   Supplement on Form 14A on March 15, 2016, more than two weeks prior to the March 31, 2016

20   special meeting of Affymetrix stockholders (the "Special Meeting") and shareholder vote as to

---

[14]   Plaintiffs' prosecution efforts included (1) coordinating efforts amongst Plaintiffs in the various related actions; (2) negotiating with  defendants the timing and scope of discovery; (3) reviewing certain non-public documents including, *inter alia*, documents relating to the process leading up to the Merger and the valuation of the Company, including the Company Board presentation materials and the financial analyses of the Company's financial advisor, Morgan Stanley; (4) consulting with financial and valuation experts; (5) negotiating the Settlement; and (6) conducting the depositions of Affymetrix's Board Chair at the time of the Merger, Jami K. Dover Nachtscheim (May 10, 2016), Affymetrix's CEO at the time of the Merger, Frank Witney (May 19, 2016), and a managing director of Affymetrix's financial advisor in connection with the Merger, Morgan Stanley (June 2, 2016).

1   whether or not to adopt and approve the Merger Agreement.  *See* Stipulation Ex. A.  Defendants

2   explicitly acknowledge that the filing and prosecution of the Actions provided the primary cause of

3   the Supplemental Disclosures.  *See* Stipulation ¶ 2.1.  Absent Plaintiffs' and their counsels'

4   intervention, Affymetrix shareholders would have been forced to make the decision whether to

5   vote to approve the Merger or seek appraisal based upon materially incomplete and misleading

6   disclosures.

7   **IV.   THE SUPPLEMENTAL DISCLOSURES PROVIDED AFFYMETRIX
        SHAREHOLDERS WITH REQUIRED MATERIAL INFORMATION THAT WAS
8       OMITTED FROM THE PROXY**

9       **A.    The Materiality Standard**

10      A Company must disclose information in a Proxy disseminated to solicit shareholder votes

11  "if there is a substantial likelihood that a reasonable shareholder would consider it important in

12  deciding how to vote."  *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  While the

13  Supreme Court in *TSC* explained that for omitted information to be material it must "have assumed

14  actual significance in the deliberations of the reasonable shareholder," the Court also explicitly held

15  that the omitted information *need not* "have caused the reasonable investor to change his vote" with

16  respect to the transaction at issue.  *Id*; *see also Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988);

17  *Kramas v. Sec. Gas & Oil Inc.*, 672 F.2d 766, 769 (9th Cir. 1982) (same).

18      As the Second Circuit explained in interpreting the Supreme Court's *TSC* opinion: "**[I]t is**

19  **well-established that a material fact need not be outcome-determinative; that is, it need not be**

20  **important enough that it would have caused the reasonable investor to change his vote**.

21  Rather, the information need only be important enough that it would have assumed actual

22  significance in the deliberations of the reasonable shareholder."  *Folger Adam Co. v. PMI Indus.,*

23  *Inc.*, 938 F.2d 1529, 1533 (2d Cir. 1991) (emphasis added) (citations omitted) (internal quotation

24  marks omitted).

25      Moreover, SEC regulations require the disclosure of certain information in solicitation

26  materials.  Thus, when a company discloses material information in a Proxy that includes non-

27  GAAP financial measures, the Company must also disclose that non-GAAP financial measure with

28

comparable GAAP measures and a quantitative reconciliation of forward-looking information.  17 C.F.R. § 244.100.[15]

By any measure, be it the Supreme Court standard or the SEC's regulatory mandates, the Supplemental Disclosures provided Affymetrix shareholders with necessary and material information required to afford them the opportunity to make an informed decision whether or not to follow the Board's recommendation and approve the Merger.

**B.      Morgan Stanley's Conflict of Interest Through Significant Holdings in the Buyer**

First, the Supplemental Disclosure regarding Morgan Stanley's holding of approximately **2% of Thermo Fisher's outstanding common stock** was of particular significance to Affymetrix shareholders.  The Proxy originally merely included a standard boiler plate sentence, which appears in every proxy statement, that:

> Morgan Stanley, its affiliates, directors and officers *may* at any time invest on a principal basis or manage funds that invest, hold long or short positions, finance positions, and may trade or otherwise structure and effect transactions, for their own account or the accounts of its customers, in debt or equity securities or loans of Affymetrix, Thermo Fisher or any other company, or any currency or commodity, that may be involved in this transaction, or any related derivative instrument.

Proxy at 37 (emphasis added).

---

[15]      The SEC Chair, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as was the case in the Affymetrix Merger), implicates the centerpiece of the SEC's disclosures regime. "In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures **misleading**: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures." *See* Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability (June 27, 2016),   www.sec.gov/news/speech/chair-white-icgn-speech.html#_ftnref38   (emphasis   added) (footnotes omitted).

1    This boilerplate disclosure itself was itself materially misleading, because it alluded to

2   potential future transactions in Thermo Fisher rather than disclosing the bankers' enormous actual,

3   then-existing financial interest in the buyer.  Morgan Stanley's equity investment in the buyer was a

4   factor that Affymetrix shareholders were entitled to know about when weighing the credibility of

5   the Morgan Stanley fairness opinion.  Disclosing to shareholders that the banker upon whose

6   fairness opinion they are being asked to rely "may at any time" hold a position in the acquiring

7   company actually told them nothing about the potential impact such holdings may have on the

8   advisor's willingness to support the transaction.  Telling the stockholders that something **might**

9   **happen**, when in reality that fact (which was cast as a mere possibility) was **actually already**

10   **actually present**, is materially misleading.  *Huddleston v. Herman & MacLean*, 640 F.2d 534, 544

11   (5th Cir. 1981) ("To warn that the untoward may occur when the event is contingent is prudent; to

12   caution that it is only possible for the unfavorable events to happen when they have already

13   occurred is deceit."); *see also Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004) (citing *In re*

14   *Prudential Secs. Inc. P'ships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) (holding that the law

15   "provides no protection to someone who warns his hiking companion to walk slowly because there

16   might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot

17   away.").

18    In order to properly assess the significance of the conflict, shareholders must have an

19   understanding of the financial significance of the banker's holdings in the buyer at the time the

20   banker rendered its fairness opinion.  That is exactly what Affymetrix shareholders were informed

21   of here as a result of the Supplemental Disclosures.  Specifically, Affymetrix shareholders learned

22   that Morgan Stanley **actually held** approximately 2% of Thermo Fisher's outstanding common

23   stock during the relevant time frame.  A 2% holding equated to approximately **8 million** of Thermo

24   Fisher's 395 million outstanding shares, which, based upon Thermo Fisher's $134.16 closing price

25   on January 8, 2016 (the date Morgan Stanley rendered its fairness opinion) were worth **over $1**

26   **billion**.  Such an enormous stake in the buyer's equity clearly constituted a significant conflict of

27   interest, which Affymetrix shareholders were absolutely entitled to know about and assess in

28

1    connection with determining how much weight, if any, to afford to Morgan Stanley's fairness

2    opinion and underlying valuation analyses.

3         Indeed, as courts have consistently emphasized, "[i]nformation that bears on whether an

4    investment bank faces conflicts of interest is material to stockholders when deciding how to vote on

5    a merger. . . ." *In re Rural Metro Corp. Stockholders Litig.*, 88 A.3d 54, 105 (Del. Ch. 2014).  "It is

6    imperative for the stockholders to be able to understand what factors *might* influence the financial

7    advisor's analytical efforts.   A financial advisor's own proprietary financial interest in a proposed

8    merger must be carefully considered in assessing how much credence to give its analysis.  For that

9    reason, the benefits of the Merger to the investment banker, beyond its expected fee, must also be

10   disclosed to the stockholders." *Id.* (quoting *David P. Simonetti Rollover ISA v. Margolis*, No. 3694-

11   VCN, 2008 Del. Ch. LEXIS 78, at *25-26 (Del. Ch. June 27, 2008)); *In re Del Monte Foods Co.*

12   *S'holders Litig.*, 25 A.3d 813, 832 (Del. Ch. 2011) (same); *In re John Q. Hammons Hotels Inc.*

13   *S'holder Litig.*, No. 758-CC, 2009 Del. Ch. LEXIS 174, at *55-56 (Del. Ch. Oct. 2, 2009) (same);

14   *In re Lear Corp. S'holder Litig.*, 926 A.2d 94, 114 (Del. Ch. 2007) ("Put simply, a reasonable

15   stockholder would want to know an important economic motivation of the negotiator singularly

16   employed by a board to obtain the best price for the stockholders, when that motivation could

17   rationally lead that negotiator to favor a deal at a less than optimal price, because the procession of a

18   deal was more important to him, given his overall economic interest, than only doing a deal at the

19   right price.").   Further, "[t]here is no rule that conflicts of interest must be disclosed only where

20   there is evidence that the financial advisor's opinion was actually affected by the conflict." *Rural*

21   *Metro*, 88 A.3d at 105 (internal quotation marks omitted).   Thus, all factors that may entice a

22   financial advisor to favor a particular transaction must be fully disclosed.  *See id.*

23        Based on the foregoing authority -- not to mention common sense -- this undoubtedly

24   constituted material information which would have "assumed actual significance in [stockholders']

25   deliberations" regarding the Merger and the credibility of Morgan Stanly's fairness opinion. *Folger*

26   *Adam Co.*, 938 F.2d at 1533.

27

28

### C. Affymetrix Financial Projections Disclosures Were Material

Plaintiffs also obtained in the Supplemental Disclosures the projected GAAP measures as well as the projected inputs used to run the non-GAAP measure "levered free cash flow" (collectively, the "Newly Disclosed Projections").

The Newly Disclosed Projections included: (i) depreciation & amortization; (ii) interest expense; (iii) taxes; (iv) litigation expense; (v) change in working capital/other; and (vi) capital expenditures. The Newly Disclosed Projections were relied upon by Morgan Stanley in connection with its valuation analyses and relied upon by the Board in assessing the fairness of the Merger, but were omitted from the Proxy.[16] These inputs were material to Affymetrix shareholders as they disclose the manner by which the Company management determined Affymetrix's free cash flows, a non-GAAP measure that is a critical input in Morgan Stanley's valuations and ultimate fairness opinion. Additionally, Defendants added a new footnote to clarify the treatments of these projected measures for purposes of running the levered free cash flow. *See* Proxy at 39.

As an initial matter, numerous courts[17] have recognized the materiality of management's internal financial projections. *See, e.g., Brown v. Brewer*, No. CV 06-3731-GHK (SHx), 2010 U.S.

---

[16]    "The Board considered Affymetrix' financial condition, results of operations and business and earnings prospects if it were to remain independent in light of various factors, including a consolidating market, Affymetrix' current and anticipated near-term operating results, the competitive dynamics of the life sciences and diagnostics sector and Company's ability to execute on its strategic plan. . . ." Proxy at 23.

[17]    Delaware courts have similarly frequently held that financial projections are among the most important and most coveted information for shareholders in considering whether or not to approve a merger transaction, like that at issue here. *See In re PNB Holding Co. S'holders Litig.*, No. 28-N, 2006 Del. Ch. LEXIS 158, at *59 (Del. Ch. Aug. 18, 2006) ("[R]eliable management projections of the company's future prospects are of obvious materiality to the electorate. After all, the key issue for the stockholders is whether accepting the merger price is a good deal in comparison with remaining a shareholder and receiving the future expected returns of the company."); *In re BioClinica, Inc. S'holder Litig.*, No. 8272-VCG, 2013 Del. Ch. LEXIS 52, at *18-21 (Del. Ch. Feb. 25, 2013) (holding financial projections material when used by the company's financial advisor); *Helaba Invest Kapitalanlagegesellschaft mbH*, 2008 Del. Ch. LEXIS 155, at *5, *16-17 (Del. Ch. Apr. 11, 2008) (finding disclosure of financial projections used by advisor in connection with its fairness opinion material). Indeed, "the projections are the information that most stockholders would find the most useful to them." *In re Staples Inc. S'holders Litig.*, 792 A.2d 934, 958 n.44 (Del. Ch. 2001); *see also In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (holding that "projections of this sort are probably among the most highly-prized disclosures by investors.").

1  Dist. LEXIS 60863, at *70 (C.D. Cal. June 17, 2010) ("A reasonable shareholder would have

2  wanted to independently evaluate management's internal financial projections to see if the company

3  was being fairly valued.  There is a substantial likelihood that a reasonable shareholder would

4  consider it important in making his decision" (internal quotation marks omitted); *Schulein v.*

5  *Petroleum Dev. Corp.*, No. SACV 11-1891 AG (ANx), 2014 U.S. Dist. LEXIS 71236, at *19 (C.D.

6  Cal. May 19, 2014) (same).  Further, "if a Proxy disclosed valuation information, it must be

7  complete and accurate."  *Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 874 (S.D. Ohio

8  2013) (quoting *Brown*, 2010 U.S. Dist. LEXIS 60863, at *69-70).  Indeed, the *Smith* Court denied a

9  motion to dismiss a Section 14(a) claim premised in part upon the omission of financial projections

10  for depreciation and amortization, capital expenditures and changes in working capital from a proxy

11  statement, the exact projections that were provided to Affymetrix shareholders here as a result of

12  the Supplemental Disclosures.  969 F. Supp. 2d at 874.

13       Further, the Newly Disclosed Projections were particularly important here, because they

14  allowed Affymetrix shareholders to make sense of the various unique "adjustments" made to the

15  previously disclosed non-GAAP projections that were included in the Proxy.  *See* Keath Aff. ¶¶ 23,

16  27.  Specifically, the Proxy included projections for adjusted earnings before interest, taxes,

17  depreciation, and amortization ("EBITDA"), a non-GAAP measure that takes EBITDA and then

18  makes various "adjustments" by adding or subtracting certain other line item projections.

19  Additionally, the Supplemental Disclosures clarified that the "free cash flow" projections, as they

20  were incorrectly labeled in the Proxy, were actually "**levered** free cash flow" projections (rather

21  than the typical "unlevered free cash flows" which are projected cash flows available before paying

22  company financial obligations), and further explained that such a metric is a non-GAAP measure

23  that was adjusted by adding and subtracting the line items set forth in the Newly Disclosed

24  Projections.  Keath Aff. ¶¶ 11, 13-15.  All of this information in the Supplemental Disclosures was

25  material and critical for shareholders because the Proxy expressly stated that the Board reviewed

26  these projections when considering the Merger and as a basis to tell shareholders to vote in favor of

27  the Merger.  *See id.*

28

1    SEC regulations, per 17 C.F.R. § 244.100(a), require disclosing entities to provide a full

2    reconciliation to most similar GAAP metrics whenever disclosing non-GAAP financial measures.

3    Indeed, the SEC has repeatedly emphasized that misleading disclosure of non-GAAP projections

4    can be inherently misleading, and has therefore heighted its scrutiny of the use of such projections.

5    *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving*

6    *Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24,

7    2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-

8    views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y.

9    Times,        Apr.        22,        2016,        http://www.nytimes.com/2016

10   /04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0. Keath Aff. ¶

11   26.  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated

12   Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures

13   that demonstrate the SEC's tightening policy.  Grabar, *Non-GAAP Financial Measures: The SEC's*

14   *Evolving Views*.  One of the new C&DIs is regarding forward-looking information, such as financial

15   projections, explicitly requiring companies to provide *any* reconciling items that are available

16   without unreasonable efforts.  *Id*.  The Newly Disclosed Projections are precisely the types of

17   "reconciling items" the disclosure of which the SEC has clearly required to render non-GAAP

18   financial projections not misleading to shareholders.  *See* Keath Aff. ¶¶ 23, 27.  Thus, because they

19   were required by SEC regulations, the Newly Disclosed Projections were material.  *See, e.g., Litwin*

20   *v. Blackstone Grp., L.P.*, 634 F.3d 706, 718 (2d Cir. 2011) (holding that omission of information

21   that issuer "was required to disclose" was presumptively material).

22       In sum, the Newly Disclosed Projections were required by specific SEC regulations and thus

23   particularly material to Affymetrix shareholders and, standing alone, would warrant final approval

24   of the Settlement.

25

26

27

28

### D.     Disclosure of Morgan Stanley's Treatment of Stock-Based Compensation Was Material

The Supplemental Disclosure regarding the Company's and Morgan Stanley's treatment of stock-based compensation in connection with certain valuation methods was also material to Affymetrix shareholders.  *See* Keath Aff. ¶ 17.

Stock-based compensation ("SBC") was a significant expense for Affymetrix and its treatment was material to shareholders, because it directly impacted the Company's projected cash flows and valuation.  As with other financial metrics, if a company is going to deviate from standard norms treatment for a particular significant financial metric, that must be disclosed.[18]  The implications of the treatment of SBC on a company's financials can be enormous if the company relies in significant measure on SBC.

In this case, Morgan Stanley disclosed that, in running its Discounted Cash Flow Analysis, it did the following:

> Morgan Stanley calculated Affymetrix' annual unlevered free cash flows by taking Affymetrix' projected Adjusted EBITDA *less stock-based compensation*, litigation expense, change in working capital / other, capital expenditures, and normalized taxes based on assumptions provided by Affymetrix.

Proxy at 36 (emphasis added).

The Company's projected "levered free cash flows" were calculated starting with its net income "*plus* depreciation & amortization, stock-based compensation and change in working capital / other, minus capital expenditures. . . ." Proxy at 39 n.2 (emphasis added).

The discounted cash flow analysis is the most significant analysis upon which a fairness opinion can rest.  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1575-76 (Aug. 2006) ("in the corporate control transaction paradigm the most important analysis is, absent unusual circumstances, the discounted cash flow calculus.").  Keath Aff. ¶ 9.  Rather than valuing a company by comparing it with other companies through a multiples analysis, the DCF attempts to

---

[18]     Prior to 2006, companies were not required to treat SBC as an expense under GAAP.  The Financial Accounting Standards Board ("FASB") changed the GAAP treatment so that SBC is reflected as a cost to the company.

value a company based on that company's own projections of internal financial measures.  Here, the Supplemental Disclosures revealed the manner in which Morgan Stanley treated SBC in conducting its "most important analysis" which ultimately had the effect of decreasing the valuation of Affymetrix underlying Morgan Stanley's fairness opinion.  *See* Keath Aff. ¶ 17.

Courts have found that this precise piece of information is material to shareholders in assessing a discounted cash flow analysis, as it calls into question the legitimacy of the analysis. For example, as the Delaware Court of Chancery explained in *Laborers Local 235 Benefit Funds v. Starent Networks, Corp*., No. 5002, 2009 Del. Ch. LEXIS 210, at *2 (Del. Ch. Nov. 18, 2009):

> [T]he discounted cash flow analysis -- arguably the most important valuation metric -- treats the stock-based compensation as a cash expense. This change in norms, from a non-cash expense to a cash expense, allegedly results in a lower valuation range. Though there may be a valid reason for the treatment of the stock-based compensation in the discounted cash flow analysis, that this detour is not disclosed or otherwise highlighted in the relevant proxy statement section gives me pause. Thus, plaintiff has established a colorable disclosure claim. As a disclosure claim, it threatens irreparable harm by omitting material information or by misleading stockholders regarding information that a reasonable investor would want to know before making a decision.

*See also In re Celera Corp. S'holder Litig*., No. 6304-VCP, 2012 Del. Ch. LEXIS 66, at *87-88 (Del. Ch. Mar. 23, 2012), *rev'd in part on other grounds*, 59 A.3d 418 (Del. 2012) (finding the corrective disclosure that stock-based compensation was "unusual[ly]" and "uncommon[ly]" treated as a cash expense to be "significant").  Federal courts have similarly recognized that the failure to disclose questionable valuation assumptions underlying a fairness opinion constitutes a violation of Section 14(a).  *See, e.g., Smith*, 969 F. Supp. 2d at 871 (denying motion to dismiss Section 14(a) claim where proxy failed to disclose "how stock-based compensation was treated in Citi's DCF analysis"); *Biver v. Nicholas Fin., Inc.*, No. 8:14-cv-250-T-33TGW, 2014 U.S. Dist. LEXIS 73933, at *13 (M.D. Fla. May 30, 2014) (denying motion to dismiss Section 14(a) claim where proxy "summarize[d] Janney's two relative valuation analyses and equity discounted cash flow analysis in a manner that fails to provide shareholders with sufficient information to make an informed decision[.]").

Moreover, the Supplemental Disclosures revealed the following regarding Affymetrix's SBC:

1

> For the purposes of the selected comparable companies analysis, Morgan Stanley used **adjusted EBITDA figures for Affymetrix**, rather than unadjusted EBITDA figures which were used to formulate the applicable pricing multiples for the selected comparable companies, because in Morgan Stanley's professional judgment **using adjusted EBITDA was necessary to account for Affymetrix' use of stock-based compensation, which was larger as a percentage of unadjusted EBITDA compared to that of its peers**.

Proxy at 33 (emphasis added).

Accordingly, the Supplemental Disclosure regarding Morgan Stanley's assumptions in connection with its Discounted Cash Flow Analysis was also material to Affymetrix shareholders. *See* Keath Aff. ¶¶ 14-17.

### E.    The Disclosures Regarding the Sales Process Were Material

The Supplemental Disclosures included information regarding potential conflicts including:(i) the potential conflicts of interest that could have impacted the Merger Agreement terms, including those faced by Affymetrix's financial advisor Morgan Stanley; (ii) Board conflicts reflected in communications and agreements between Thermo Fisher and Affymetrix management as to continued employment; and (iii) additional information regarding the negotiation of the termination fee.

Importantly, Defendants disclosed the basis for the Board's engagement of Morgan Stanley (Stipulation Ex. A, 18), the ongoing efforts to review Morgan Stanley's potential conflicts that could arise through its relationships with the bidders that were involved in the sales process, including Thermo Fisher (Stipulation Ex. A, 19), and the equity position Morgan Stanley held in Thermo Fisher.  (Stipulation Ex. A, 37).  The additional information regarding a potential conflict of interest was necessary for shareholders to consider even if Affymetrix's Board approved the conflict.  Stockholders are entitled to consider for themselves whether a conflict of interest is present.  "There is no rule, however, that conflicts of interest must be disclosed only where there is evidence that the financial advisor's opinion was actually affected by the conflict."  *John Q. Hammons Hotels*, 2009 Del. Ch. LEXIS 174, at *56.  Even where these potential conflicts did not lead to a failure to adequately advise Affymetrix, the information was material and must be disclosed.  *See Del Monte*, 25 A.3d at 832 ("Because of the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, this

1  Court has required full disclosure of investment banker compensation and potential conflicts.");

2  *John Q. Hammons Hotels.*, 2009 Del. Ch. LEXIS 174, at *54-56 ("This Court, however, has

3  stressed the importance of disclosure of potential conflicts of interest of financial advisors. . . . It is

4  imperative that stockholders be able to decide for themselves what weight to place on a conflict

5  faced by the financial advisor.").

6         The Supplemental Disclosures further allowed shareholders to assess whether insiders had

7  elevated their self-interest above shareholder interests during the negotiating process by

8  negotiating the special and unique benefit of continued lucrative employment packages post-

9  merger.  (Stipulation Ex. A, 29).  Plaintiffs also negotiated the disclosure of additional information

10  regarding the process taken by the Company in negotiating the Merger.  First, the Supplemental

11  Disclosures disclosed that:

12         Thermo Fisher has not entered into any new employment agreements with any
       officers or directors of Affymetrix or made any formal offers to enter into any such
13         new employment agreements with any officers or directors of Affymetrix.  After
       execution of the Merger Agreement, Thermo Fisher indicated that it is analyzing
14         whether it intends to extend offers of employment to some or all of Affymetrix'
       officers.

15  This information was necessary for Affymetrix shareholders to understand the interests of

16  management and the Board, as that information can provide illumination concerning any

17  motivations that would prevent fiduciaries from acting solely in the best interests of the

18  Company's stockholders.  *See In re Complete Genomics Inc. S'holder Litig.*, Del. Ch., Consol.

19  C.A. 7888-VCL, at *20 (Del. Ch. Nov. 9, 2012) (finding that communications regarding post-

20  transaction employment during the negotiation of the underlying transaction must be disclosed); *In*

21  *re Atheros Communs., Inc. S'holder Litig.*, 2011 Del. Ch. LEXIS 36, at *41-42 (Del. Ch. Mar. 4,

22  2011) (holding that "[k]nowledge that, even though specific terms were not elicited until later in

23  the process, [an insider] was aware that he would receive an offer of employment from [a specific

24  buyer] at the same time he was negotiating . . . would be important to a reasonable shareholder's

25  decision regarding the [t]ransaction").

26         Second, the Supplemental Disclosures corrected a material omission concerning the

27  negotiation of a 4.5% termination fee payable to Thermo Fisher.  This percentage appeared

28

unusually high when compared to the termination fees of the transactions analyzed in Morgan Stanley's *Select Precedent M&A Transactions Analysis*. The Supplemental Disclosures disclosed that:

> The principal open item was the amount of the "breakup fee" (also referred to herein as the "termination fee") payable to Thermo Fisher if the agreement were terminated under certain circumstances. Thermo Fisher had come down from its original proposal framed as 4.5% of fully diluted equity value (equivalent to approximately $66 million) to $60 million, while Affymetrix had come up from its original proposal framed as 2.5% of fully diluted equity value (equivalent to approximately $37 million) to $50 million. The Board directed Affymetrix management and its financial and legal advisors to try to resolve the fee at $55 million, which was within the range of termination fees (on a percentage of equity basis) in precedent transactions.

Stipulation, Ex. A, 22.

Additionally, the Supplemental Disclosures explained in detail the rationale for entering into the exclusivity agreement with Thermo Fisher at the December 28, 2015 Board meeting, a time when Companies A and B had submitted what appeared to be competitive proposals, *i.e.*, that in fact each proposal was dependent on obtaining outside financing which likely would protract the negotiations and could jeopardize the proposal from Thermo Fisher. (Stipulation Ex. A, 21).

When a company "'travel[s] down the road of partial disclosure of the history leading up to the Merger …, [it has] an obligation to provide the stockholders with an accurate, full, and fair characterization of those historic events.'" *See In re MONY Grp. Inc. S'holder Litig.*, 852 A.2d 9, 25 (Del. Ch. 2004). Such facts relating to the sale and negotiation process are material to shareholders, and must be disclosed because they are critical to a determination regarding the adequacy or inadequacy of the Company's negotiations for the best price on behalf of shareholders. *See, e.g., Gantler v. Stephens*, 965 A.2d 695, 710-11 (Del. 2009). These additional disclosures corrected a material omission regarding the negotiation of the Merger Agreement.

### F.  The Disclosures Regarding Morgan Stanley's Valuations Were Material

The Supplemental Disclosures provided shareholders with additional inputs and assumptions utilized by Morgan Stanley to render its fairness opinion to the Board including: (i) with respect to the *Discounted Cash Flow Analysis*, that Morgan Stanley calculated equity value

1    using net cash of $116 million, not net debt as had originally been disclosed in the Proxy; (ii) with

2    respect to the Comparable Companies Analysis, an explanation that the rationale for utilizing

3    Affymetrix's adjusted EBITDA rather than unadjusted EBITDA, which was used to calculate

4    pricing multiples for the selected companies, was to account for Affymetrix's use of stock based

5    compensation, which was larger in relation to unadjusted EBITDA than its peers; and for both the

6    *Comparable Companies Analysis* and *Selected Precedent M&A Transactions Analysis*, disclosure

7    of the adjustments used to determined equity values based on the Base Case and Unrisked Upside

8    Case Company projections (Stipulation, Ex. A, 33, 35).  All of this information was material to a

9    reasonable Affymetrix stockholder.

10       The disclosure relating to the DCF analysis is material to Affymetrix's stockholders

11    because "the discounted cash flow analysis [is] arguably the most important valuation metric" for a

12    company's stockholders.  *Laborers Local 235 Benefit Funds*, 2009 Del. Ch. LEXIS 210, at *1-2.

13    The omitted information permitted stockholders to assess whether Morgan Stanley's inputs were

14    reasonable, and assisted them in determining the inherent value of the Company for themselves.

15    The additional information is also material, and necessary to fully inform stockholders making a

16    voting decision.  *See Netsmart*, 924 A.2d at 203-04 (requiring disclosure of the key methods and

17    inputs used in financial analyses underlying a banker's fairness opinion).

18       Affymetrix stockholders, among other disclosures, also received the benefit of disclosure of

19    Morgan Stanley's method of calculating equity value for the other various financial analyses,

20    including the *Affymetrix Selected Comparable Companies Analysis*, *Affymetrix Discounted Equity

21    Value Analysis*, *Select Precedent M&A Transactions Analysis*, and *Premia Paid Analysis*.  Without

22    the benefit of this additional disclosure, the Proxy materially misled Affymetrix stockholders by

23    disclosing only a partial summary of each analysis, omitting a key attribute of each.  *See Netsmart*,

24    924 A.2d at 203-04 (requiring disclosure of the key attributes of financial analyses underlying a

25    banker's fairness opinion).

26

27

28

Plaintiffs submit that the Supplemental Disclosures provided a substantial benefit by disclosing material facts to Affymetrix shareholders before the vote on the Merger, the omission of which made the Proxy materially misleading.

**V.**  **THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT**

    **A.**  **Standards for Approval of Class Action Settlements**

Rule 23(e) requires that before a class action is dismissed or compromised, notice of the proposed dismissal or compromise must be given in the manner directed by the Court and judicial approval must be obtained.   To that end, the Court must find that the proposed settlement is "fundamentally fair, adequate, and reasonable.   *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1040 (N.D. Cal. 2008) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citations omitted)).   The Ninth Circuit has provided a list of factors which may be considered in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of Plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998)); *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993).

Therefore, "[a] settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi,* 8 F.3d at 1375.  This ultimate decision is in the "sound discretion of the district courts [which] appraise[s] the reasonableness of particular class-action settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). A settlement agreement is presumptively fair if it "was reached in arm's length negotiations, after relevant discovery had taken place." *Linney v. Cellular Alaska P'ship*, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997).  Therefore, in exercising its discretion, the court's intrusion upon what is otherwise

a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *Officers for Justice*, 688 F.2d at 625. As explained below and in the Rohr declaration, the application of these criteria to the settlement supports its approval by the Court.

Additionally, the Ninth Circuit has a policy favoring settlement, "particularly in class action suits." *Omnivision,* 559 F. Supp. 2d at 1041; *see also Officers for Justice*, 688 F.2d at 625 (stating that "it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation[.]"). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bonkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Moreover, in reviewing this Settlement under Rule 23, the Court should not substitute its business judgment for that of counsel who litigated the case. *See, e.g., Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D 523, 528 (C.D. Cal. 2004). Rather, the settlement should be approved if it is within a "range of reasonableness." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). The court's inquiry into the settlement agreement is ultimately limited to the extent necessary to make a judgment that the agreement is not "the product of fraud or overreaching by, or collusion between, the negotiating parties." *Omnivision*, 559 F.Supp. 2d at 1041 (internal citations omitted). Thus, the court "need not reach the merits of the case or form conclusions about the underlying questions of law or fact" in determining the fairness, reasonableness and adequacy of a settlement agreement. *Id.*

**B.       The Settlement Meets the Ninth Circuit Standard for Approval**

> **1. The Parties Were Able to Assess the Strengths and Weaknesses of Their Cases**

The stage of the proceedings and the amount of information available to both of the parties to assess the strengths and weaknesses of their cases is one of the factors which courts consider in

1   determining the fairness, reasonableness, and adequacy of a settlement. *See Mego*, 213 F.3d at

2   459; *Lundell v. Dell, Inc.*, No. 05-3970, 2006 U.S. Dist. LEXIS 90990, at *9 (N.D. Cal. Dec. 4,

3   2006).

4   Here, Plaintiffs' Counsel (i) conducted an extensive investigation of the Company and its

5   Board's decision to enter into the Merger through the review of the Company's public filings,

6   news articles, and analyst reports; (ii) reviewed certain non-public documents including, *inter alia*,

7   documents relating to the process leading up to the Merger and the valuation of the Company,

8   including the Company Board presentation materials and the financial analyses of the Company's

9   financial advisor, Morgan Stanley; (iii) consulted with financial and valuation experts; and (iv)

10  took the depositions of Affymetrix's Board Chair at the time of the Merger, Jami K. Dover

11  Nachtscheim (May 10, 2016), Affymetrix's CEO at the time of the Merger, Frank Witney (May

12  19, 2016), and a managing director of Affymetrix's financial advisor in connection with the

13  Merger, Morgan Stanley (June 2, 2016).  As a result of these undertakings, Plaintiffs' Counsel had

14  a comprehensive understanding of the strengths and weaknesses of the case and sufficient

15  information to make an informed decision regarding the fairness of the Settlement before

16  presenting it to the Court.  *See Mego Fin.*, 213 F.3d at 458.

17  ### 2. The Settlement Appropriately Balances the Risks of Litigation and the Benefit to the Class of a Certain Remedy

18

19  To determine whether the proposed Settlement is fair, reasonable, and adequate, the

20  Court must balance the continuing risks of litigation against the benefits afforded to Class

21  members and the immediacy and certainty of a recovery.  *Mego Fin.*, 213 F.3d at 458; *Girsh*

22  *v, Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd*, 485 F. Supp. At 617.  In other words,

23  [t]he Court shall consider the vagaries of litigation and compare the significance of
    immediate recovery by way of the compromise to the mere possibility of relief in the
24  future, after protracted and expensive litigation. In this respect, [i]t has been held
    proper to take the bird in hand instead of a prospective flock in the bush.

25  *Nat'l Rural*, 221 F.R.D. at 256; *see also Lundell*, 2006 U.S. Dist. LEXIS 90990, at*9-*10.

26  In the context of approving class action settlements, courts attempting to balance these

27  factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain."

28

1   *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v.*

2   *Beasley*, 73 F.R.D. 658 (S.D.N.Y. 1977).   Here, a balance of these factors weighs heavily in

3   support of approval of the Settlement and unquestionably outweighs the distinct possibility that the

4   Class would receive no recovery at all.

5        If not for this Settlement, Affymetrix's former shareholders would have been forced to

6   make their momentous decision on the fate of the Company's independent existence, in an

7   uninformed manner by not being provided with all material information necessary to their

8   decision.

9        It is well established that settlements resulting in the protection of shareholders' corporate

10   suffrage rights provide meaningful consideration to a class.   *Mills v. Elec. Auto-Lite Co.*, 396 U.S.

11   375, 396 (1970) ("[T]he stress placed by Congress on the importance of fair and informed

12   corporate suffrage leads to the conclusion that, in vindicating the statutory policy, petitioners have

13   rendered a substantial service to the corporation and its shareholders."); *Koppel v. Wien*, 743 F.2d

14   129, 134-35 (2d Cir. 1984) ("[i]t is well established that non-monetary benefits, such as promoting

15   fair and informed corporate suffrage . . . may support a [settlement].").   Such settlements are

16   particularly warranted in cases where monetary relief is unavailable or unlikely.   *See Bell Atl.*

17   *Corp. v. Bolger*, 2 F.3d 1304, 1313 (3d Cir. 1993) (affirming approval of nonmonetary settlement

18   due to "the improbability of [plaintiffs'] success on the merits given the individual defendants'

19   strong defenses."); *McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 641 F. App'x 146, 151

20   (3d Cir. 2015) (affirming approval of non-monetary settlement where the "likelihood of the

21   plaintiffs actually recovering any portion of that damages calculation was dubious."); *Yeung Chan*

22   *v. Diamond*, No. 03 Civ. 8494 (WHP), 2005 U.S. Dist. LEXIS 6939, at *7 (S.D.N.Y. Apr. 25,

23   2005) (approving non-monetary settlement where "any monetary recovery from defendants was far

24   from assured. . . .") The fact that "[t]he plaintiff class faces substantial obstacles to establishing

25   liability for money damages . . . is a legitimate consideration of counsel when assessing the

26   appropriateness of a non-cash settlement."   *First State Orthopaedics v. Concentra, Inc.*, 534 F.

27   Supp. 2d 500, 521 (E.D. Pa. 2007).

28

Additionally, Plaintiffs' Counsel has concluded that the Settlement rendered Plaintiffs' Section 14(a) and 20 claims moot, and that the Released Claims, which are limited solely to those claims related to the Merger possessed by the Settlement Class members in their capacity as Affymetrix shareholders, are not viable.   The Settlement therefore resulted in the best possible outcome for the Settlement Class.

### a. Plaintiffs' Section 14(a) and Section 20 Claims Were Rendered Moot By The Supplemental Disclosures

Plaintiffs' Section 14(a) and Section 20 claims[19] were rendered moot as a result of the Supplemental Disclosures.   In other words, the Settlement provided the Class with the precise relief that Plaintiffs sought to obtain.  *See Aron*, 2016 U.S. Dist. LEXIS 152427 at *11 ("In Section 14(a) cases concerning non-disclosure in proxy statements, plaintiffs are made whole where the company fully and adequately discloses material facts before the shareholder vote.").   Thus, the benefit the Class obtained via the Settlement was the exact same as the "reward[] the class would have received following a successful" outcome on Plaintiffs' claims.  *Reed v. Gen. Motors Corp.*, 703 F.2d at 170, 172 (5th Cir. 1983).   And, because Plaintiffs' Counsel did not unearth any additional disclosure issues during discovery, there was no additional basis to pursue a Section 14(a) claim for damages.

### b. The Remaining Released Claims Are Not Viable

The Release provided for by the Settlement is similar to releases which have been approved numerous times in similar cases, and is appropriate in light of the underlying facts surrounding the Merger and discovery conducted.

First, the Release only applies to a finite group of Affymetrix shareholders - those who held shares "at any time during the period beginning on and including August 12, 2015 through and including March 31, 2016, the date of the consummation of the Merger. . . ."  Stipulation ¶ 1.16.

---

[19]      The Section 20 claim was predicated upon an underlying violation of Section 14(a), and was therefore also rendered moot as a result of the Supplemental Disclosures.  *See In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 912 (W.D. Tex. 2008) (explaining a Section 20 claim is "derivative-it is predicated on the existence of an independent violation of the securities laws.").

Any former shareholders of the Company who did not hold their share during that period are not affected by the Release.

Second, focusing on the essential words, the Released Claims include:

[C]auses of action…whether known or unknown…that have been [or] could have been [] asserted [] by or on behalf of Plaintiffs and any or all members of the Settlement Class **in their capacity as shareholders of Affymetrix … that relate in any way to** (i) the Merger Agreement or the Merger or any amendment thereto; (ii) the fiduciary and other duties owed by Defendants and the Released Parties to shareholders of Affymetrix in connection therewith; (iii) Defendants' disclosure obligations under federal, state, or any other law in connection with the Merger Agreement or the Merger; (iv) the adequacy of the consideration to be paid to Affymetrix shareholders in connection with the Merger or any amendment thereto; (v) the negotiations in connection with the Merger Agreement, or any amendment thereto, including any alleged deal protection devices, (vi) the alleged aiding and abetting of any breach of fiduciary duty in connection with the Merger Agreement or the Merger; (vii) any alleged improper personal benefit, conflict of interest, improper payments of any remuneration or employment benefits to any individual made in connection with the Merger Agreement or the Merger; (viii) the allegations in the Actions; and (ix) any other claim related in any way to any of the foregoing[.]

Stipulation ¶ 1.13 (emphasis added).

The release only applies to claims "that have been or could have been asserted by Plaintiffs or any member of the Settlement Class in their capacity as shareholders[.]" *Id.* From Plaintiffs' perspective, the claims one could bring "in their capacity as stockholders" would be claims for breach of fiduciary duty or violations of Section 14(a) of the '34 Act, including disclosure claims, and derivative claims.

Any Affymetrix derivative claims have been extinguished by consummation of the Merger, so there are no longer any derivative claims that could be asserted. *Lewis v. Anderson*, 477 A.2d 1040, 1049 (1984) (holding that once a plaintiff "ceases to be a shareholder, whether by reason of a merger or for any other reason, [he] loses standing to continue a derivative suit"); 8 Del. C. § 327 (providing that a derivative stockholder must be a stockholder at the time of the alleged wrong as well as throughout the course of the litigation). Moreover, Plaintiffs are confident that, had any viable derivative claims related to the Merger existed, they would have been revealed by the discovery undertaken in connection with these Actions.

Moreover, not only is the release limited to claims in the "capacity as stockholders," but they are effectively limited to stockholder claims relating to the Merger. These are, again,

1   precisely the claims the Plaintiffs explored and analyzed in the Actions, and they are appropriate

2   for release under these circumstances.  As set forth more fully above, prior to entering into the

3   Stipulation, Plaintiffs' Counsel conducted discovery to confirm the reasonableness of the

4   Settlement and explore the viability of any post-close damages claims arising out of the Merger.

5   Specifically, Plaintiffs' Counsel reviewed various documents related to the Merger, including

6   Board presentations, minutes, and email correspondence, and took three depositions of the

7   individuals most knowledgeable about the Merger, including Affymetrix's CEO, the Chair of the

8   Board, and a managing director at Morgan Stanley.  During discovery, Plaintiffs' Counsel

9   explored the sale process conducted by the Board, the Board's process of evaluating the fairness of

10  the Merger to Affymetrix shareholders, the valuation analyses utilized by Morgan Stanley in

11  support of its fairness opinion, Affymetrix's financial projections, and the views of the Board and

12  management regarding the Company's operations and strategic options.  Further, Plaintiffs'

13  Counsel consulted with their financial expert, who has extensive experience in valuing companies

14  like Affymetrix, to evaluate the consideration Affymetrix shareholders received in the Merger.

15      After completing discovery and analyzing the relevant law regarding potential claims

16  shareholders could assert in connection with the Merger, Plaintiffs' Counsel concluded that such

17  claims are not currently viable as both a matter of law and in light of known facts.  Therefore, there

18  is little to no risk to the Settlement Class in releasing such claims.

19                  **c.   A Breach of Fiduciary Duty Claim is No Longer Viable**

20      Breach of fiduciary duty claims arising out of the Merger are not viable because: (i)

21  Affymetrix did not have a controlling stockholder; (ii) the Supplemental Disclosures cured all

22  material information deficiencies in the Proxy, as Plaintiffs did not find that any additional material

23  information had been omitted from the Proxy during discovery; and (iii) Affymetrix shareholders

24  subsequently approved the Merger via a fully-informed, uncoerced vote.  Fiduciary duty claims

25  would be governed by Delaware law, as Affymetrix was a Delaware corporation.  And as the

26  Delaware Supreme Court and Court of Chancery have repeatedly emphasized in recent decisions,

27  "the approval of a merger by a majority of a corporation's outstanding shares pursuant to a

28

1   statutorily required vote of the corporation's fully informed, uncoerced, disinterested stockholders

2   renders the business judgment rule *irrebuttable*."   *In re Volcano Corp. Stockholder Litig*., No.

3   10485-VCMR, 2016 Del. Ch. LEXIS 99, at *27-34 (Del. Ch. June 30, 2016) (emphasis added)

4   (citing *Singh v. Attenborough,* No. 645, 2015, 2016 Del. LEXIS 276, at *1 (Del. May 6, 2016));

5   *Larkin v. Shah*, No. 10918-VCS, 2016 Del. Ch. LEXIS 134, at *39 (Del. Ch. Aug. 25, 2016)

6   (analyzing recent Delaware Supreme Court opinions and holding that "the business judgment rule

7   irrebuttably applies if a majority of disinterested, uncoerced stockholders approve a transaction

8   absent a looming conflicted controller.").   This "irrebutable business judgment rule" presumption

9   makes it virtually impossible to succeed upon fiduciary duty claims predicated upon a transaction

10  that was approved by shareholders.   *See id.*

11       The only remaining potential claim under Delaware law would be a claim for waste, which

12  is also not viable.   As the Delaware Supreme court explained in *Singh*:

13           When the business judgment rule standard of review is invoked because of a vote,
         dismissal is typically the result.   That is because the vestigial waste exception has
14       long had little real-world relevance, because it has been understood that stockholders
         would be unlikely to approve a transaction that is wasteful.   Certainly, there is no
15       rational argument that waste occurred here.

16  2016 Del. LEXIS 276, at *151-152.   And because Settlement Class members cannot feasibly

17  establish a predicate breach of fiduciary duty claim, any claims for aiding and abetting against

18  Morgan Stanley or any other actor are also not viable.   *Latesco, L.P. v. Wayport, Inc*., No. 4167-

19  VCL, 2009 Del. Ch. LEXIS 145, at *36 (Del. Ch. July 24, 2009) ("Because the court has already

20  determined that the plaintiffs have failed to state a claim for breach of fiduciary duty by the

21  director defendants, it is impossible to state a claim for aiding and abetting a breach of fiduciary

22  duty predicated on any such breach.").

23           **d.  Federal Securities Law Claims are Not Viable**

24       Plaintiffs' Counsel have also determined that there are no viable federal securities claims

25  related to the Merger that are being released.

26       First, neither Affymetrix nor Thermo Fisher issued or registered any stock as part of the

27  Merger, as it was an all-cash deal, thereby eliminating the possibility of claims under the '33

28

1   Act.  *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 578 (1995) (holding that Section 12(a)(2) actions

2   under the 1933 Act could only be brought by plaintiffs purchasing securities out of the public

3   offering as opposed to the aftermarket); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1080

4   n.4 (9th Cir. 1999) (holding that persons who purchased securities in the aftermarket could assert a

5   Section 11 claim if they could trace the shares to the registered offering); *DeMaria v. Andersen*, 318

6   F.3d 170, 178 (2d Cir. 2003) (holding that plaintiffs may have standing under Section 11 if they

7   purchased shares in the aftermarket that can be traced back to the offering).

8       Further, to state a Section 10(b)/Rule 10b-5 claim, a plaintiff would have to show that some

9   currently unknown material misrepresentation or omission which Defendants made with scienter

10  caused the Class to suffer economic loss.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347

11  (2005).  It has been over ten months since the Merger was announced, and no facts have emerged

12  during discovery or publicly to suggest a viable securities fraud claim in connection with the

13  Merger exists, nor is Plaintiffs' Counsel aware of any other attorneys investigating such claims.

14  And, even in the unlikely event that some unknown material misrepresentation or omission in

15  connection with the Merger emerged, Settlement Class members would be unlikely to establish loss

16  causation based on the Company's stock price performance between the announcement of the

17  Merger, and the date upon which the Company's shares ceased trading, March 31, 2016.  *See Weiss*

18  *v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 946 (D. Ariz. 2007) ("As numerous Courts have

19  concluded, *Dura* indeed requires Plaintiffs to plead loss causation by alleging that the stock price

20  fell after the truth of a misrepresentation about the stocks was revealed.").  Moreover, 10b-5 claims

21  are brought in plaintiffs' capacity as purchasers or sellers of securities, and clearly not "in their

22  capacity as shareholders" of the subject Company.  *See* 17 C.F.R. § 240.10b-5.  *See also Blue Chip*

23  *Stamps v. Manor Drug Stores,* 421 U.S. 723, 731-32 (1975) (holding that "the plaintiff class for

24  purposes of . . . 10(b) and Rule 10b-5 private damage actions is limited to purchasers and sellers of

25  securities"); *Birnbaum v. Newport Steel Corp*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956

26  (1952) (holding that 10b-5 claims may be brought only for "a fraud perpetrated upon the purchaser

27  or seller of securities and [has] no relation to breaches of fiduciary duty by corporate insiders

28

1    resulting in fraud upon those who were not purchasers or sellers.")  Thus, the release's limitation to

2    claims in the Class Members' "capacity as shareholders of Affymetrix" would exclude "purchaser

3    or seller" 10b-5 claims from its ambit.

4         In sum, the scope of the Release is appropriate, as identical releases have been approved in

5    numerous class action cases including those similar to the one at issue, and Plaintiffs' Counsel

6    conducted discovery sufficient to conclude that the likelihood of obtaining a monetary recovery in

7    connection with any of the Released Claims is exceedingly low.  Indeed, broader releases have been

8    approved in the class action context.  *See, e.g., In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663,

9    2007 U.S. Dist. LEXIS 11163, at *66 (D.N.J. Feb. 16, 2007) ("In class action settlements, releases

10   may include all claims that arise out of the same course of conduct alleged in the Complaint[,]

11   releases of known and unknown claims[,] or even claims over which the court lacked jurisdiction.")

12   (internal quotation marks omitted); *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, MDL No. 2328,

13   2015 U.S. Dist. LEXIS 97578, at *33 (E.D. La. July 27, 2015) ("The Court finds that these releases

14   are not impermissibly broad. Courts have consistently approved releases in class action settlements

15   that discharge unknown claims relating to the factual issues in the complaint.").

16              **3.   Reaction of the Class Supports Approval of the Settlement**

17        It is established that the absence of a large number of objectors to a proposed class action

18   settlement raises a strong presumption that the terms of a proposed class settlement action are

19   favorable to the class members.  *See In re Skilled Healthcare Group, Inc.*, No. 09-5416, 2011 U.S.

20   Dist. LEXIS 10139, at *11 (C.D. Cal. Jan. 26, 2011) ("In this case, the Court interprets the lack of

21   anything other than a de minimus objection as ratification of the settlement terms by the class.")

22   *see also Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *34 (C.D. Cal. June 10, 2005);

23   *Nat'l Rural*, 221 F.R.D at 528.  Although the November 28, 2016 deadline for objections has not

24   yet passed, as of November 7, 2016, neither Plaintiffs' Counsel nor the Claims Administrator have

25   received any objections to any of the terms of the Settlement, or requested fees and expenses.

26   Plaintiffs' Counsel will file an affidavit as to notice procedures and objections no later than seven

27

28

1   (7) calendar days before the December 21, 2016 Settlement Hearing, in accordance with the

2   Preliminary Approval Order.

3   **4.   The Consideration Offered in Settlement**

4   As discussed above, the Supplemental Disclosures provided substantial benefits to the

5   Settlement Class by providing additional information that assisted Affymetrix stockholders in

6   deciding whether to vote in favor of the Merger, or exercise their dissenters' rights under Delaware

7   law.  The value of the Supplemental Disclosures was significant in this case because Affymetrix

8   stockholders had the benefit of this additional information as of March 15, 2016, more than two

9   weeks before the March 31, 2016 stockholder vote on the Merger.

10   **5.   The Proposed Settlement Resulted from Arms' Length Negotiations and Did Not Involve Any Collusion**

11

12   The Settlement is the result of informed, arm's length and hard-fought negotiations

13   between Plaintiffs' Counsel and Defendants' counsel. There can be no inference whatsoever of

14   collusion here.

15   Moreover, counsel for each party is experienced and thoroughly familiar with the factual

16   and legal issues. Courts recognize that the opinion of experienced and informed counsel supporting

17   a settlement is entitled to considerable weight.  *See Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist.

18   LEXIS 103525, at *22 (S.D. Cal. Dec. 2, 2008) (finding that "it is the considered judgment of

19   experienced counsel that this settlement is a fair, reasonable, and adequate settlement of the

20   litigation, which should be given great weight"); *see also Alberto v. GMRI, Inc.*, 2008 U.S. Dist.

21   LEXIS 91691, at *29 (E.D. Cal. Nov. 12, 2008)  (stating that "when approving class action

22   settlements, the court must give considerable weight to class counsel's opinions due to counsel's

23   familiarity with the litigation and its previous experience with class action lawsuits"). 

24   Additionally, in order to avoid even a whiff of impropriety, the parties did not engage in any

25   discussion concerning attorneys' fees until all substantive elements of the Settlement had been

26   agreed upon, and agreed that the Settlement not contingent in any way upon approval of the

27   requested attorneys' fees and expenses.  *See* Stipulation at Section 5.1.

28

1    For the reasons summarized above, Plaintiffs' Counsel believes, based on their experience,

2  knowledge of the strengths and weaknesses of the case, and all other factors considered in

3  evaluating proposed class action settlements, that the proposed Settlement is fair, reasonable, and

4  adequate and in the best interests of Settlement Class Members.

## VI.   CERTIFICATION OF THE SETTLEMENT CLASS UNDER RULE 23 IS APPROPRIATE

For the sole purpose of implementing the proposed Settlement, Plaintiffs seek and Defendants agree to the certification of a Settlement Class defined as a non-opt out class consisting of all record holders and beneficial owners of Affymetrix common stock at any time during the period beginning on and including August 12, 2015 through and including March 31, 2016, the date of the consummation of the Merger. Before a class may be certified, the following requirements of Rule 23(a) must be satisfied: (a) the class is so numerous that joinder of all class members is impracticable; (b) there are questions of law or fact common to the class; (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (d) the representative parties will fairly and adequately protect the interests of the class. *See Hanlon,* 150 F.3d at 1019.

As discussed below, certification of a settlement class is appropriate here.

### A.   The Settlement Class Members Are So Numerous that Joinder Is Impracticable

While the precise number of Settlement Class Members is unknown, the number certainly exceeds any number considered practical for joinder. As of March 31, 2016, Affymetrix had approximately 63 million shares of common stock outstanding. Indeed, courts routinely hold that Rule 23(a)'s numerosity requirement is satisfied under similar facts. *See In re Applied Micro Circuits Corp. Secs. Litig.*, 2003 U.S. Dist. LEXIS 14492, at *7-8 (S.D. Cal. July 10, 2003) (finding numerosity where the company issued millions of shares and the class is presumed to have thousands of members). From this information, one may conclude that there are likely thousands of members in the Settlement Class. The threshold for a presumption of impracticability is thus easily met. *See Hanlon*, 150 F.3d at 1019.

**B.     Common Questions of Law or Fact Exist**

In order to maintain a class action, there must be "questions of law or fact common to the class . . . ." Fed. R. Civ. P. 23(a)(2) (emphasis added).  Construed liberally like the other Rule 23 requirements, commonality does not "require all questions of law and fact to be common." *In re Heritage Bond Litig.*, 2004 U.S. Dist. LEXIS 15386, at *14 (C.D. Cal. July 12, 2004) (finding that "it is not necessary that every issue of law or fact be identical"); *see also Rodriguez v. Carlson*, 166 F.R.D. 465, 472 (E.D. Wash. 1996).

This case presents numerous common questions of both law and fact.  Here, questions of law and fact common to all Settlement Class Members include:

a)     Whether the federal securities laws were violated by Defendants' acts as alleged in the Complaint;

b)     Whether Defendants breached their fiduciary duties of due care, good faith, loyalty, and candor to Affymetrix stockholders and the Class; and

c)     Whether Plaintiffs and the other members of the Class would suffer irreparable injury were the Merger consummated without the Supplemental Disclosures.

**C.     Plaintiffs' Claims are Typical of Those of the Settlement Class**

A plaintiff's claims will be deemed typical if "they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020; *see also Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 128-29 (S.D. Cal. 1996) (finding that typicality was met even though defendant claimed that the vast majority of shares were purchased by institutional investors rather than small investors and that plaintiff relied on oral representations of his broker).  The heart of the inquiry is whether the representative's claims and the class claims are interrelated so that class treatment is economical.  *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982).

Here, Plaintiffs' claims are similar to the claims of the other Settlement Class Members. Defendants' alleged course of conduct described in the Complaints uniformly affected all Settlement Class Members, as they each allegedly suffered economic injury from the materially incomplete and misleading statements of fact made by Defendants in the Proxy, or by material

1    facts omitted from the Proxy that would have made the Proxy not misleading.  Thus, the typicality

2    requirement of Rule 23(a)(3) is met.

3        **D.    Plaintiffs Are Adequate Representatives of the Settlement Class**

4        The purpose of the adequacy requirement is to "uncover conflicts of interest between

5    named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S.

6    591, 594 (1997).  The factors relevant to a determination of adequacy are: (1) the absence of

7    potential conflicts between the named plaintiffs and their counsel with other class members; and

8    (2) that counsel chosen by the representative parties is qualified, experienced and able with the

9    named plaintiffs to vigorously conduct the litigation.  *See Hanlon*, 150 F.3d at 1020.

10       There are no apparent conflicts of interest between the Plaintiffs and the absent Settlement

11   Class Members.  Plaintiffs stood in the same shoes as the Settlement Class Members with the same

12   incentives to maximize the recovery.  Indeed, Plaintiffs have been committed to the vigorous

13   prosecution of this action from the outset and have reached a resolution that they believe is in the

14   best interests of the Settlement Class.  Plaintiffs have shown that they are more than adequate

15   representatives.  Moreover, Plaintiffs' Counsel are experienced class action attorneys, have been

16   appointed as lead counsel in numerous class actions nationwide, and have successful track records

17   in litigating class actions of this type.  Plaintiffs' Counsel are qualified, experienced, and able to

18   adequately represent the proposed Settlement Class.

19       **E.    The Requirements of Rule 23(b) Are Also Satisfied**

20       In addition to meeting all of the requirements of Rule 23(a), the proposed Settlement Class

21   also satisfies both Rules 23(b)(1) and (b)(2).  Rule 23(b)(1) authorizes class certification if

22   "prosecuting separate actions by or against individual members would create a risk of: (A)

23   inconsistent or varying adjudications with respect to individual class members that would establish

24   incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect

25   to individual class members that, as a practical matter, would be dispositive of the interests of the

26   other members not parties to the individual adjudications or would substantially impair or impede

27   their ability to protect their interests[.]"  Fed. R. Civ. P. 23(b)(1).  Rule 23(b)(2) authorizes class

28

Plaintiffs' Notice of Motion, Motion,
and Memorandum of Points and Authorities in Support
of Final Approval of Class Action Settlement; Case: 16-cv-00921
-- --
37

1   certification if "the party opposing the class has acted or refused to act on grounds that apply

2   generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate

3   respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). A class certified under Rule 23(b)(1) or

4   (b)(2) is mandatory and members of the settlement class **may not** opt out. *See Wal-Mart Stores,*

5   *Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011).

6          Here, because all Settlement Class members are former Affymetrix stockholders who were

7   impacted by the Merger, there is a substantial risk of varying or inconsistent results if the Settlement

8   Class is not certified. For example, while one court may find that Defendants violated the

9   Exchange Act in connection with the Merger, another court may reach the opposite conclusion. The

10  possibility of conflicting court orders concerning the claims asserted by Plaintiffs on behalf of the

11  Settlement Class shows that certification is warranted under Rule 23(b)(1). *See, e.g.*, *In re China*

12  *Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 PSG (SSx), 2013 U.S. Dist. LEXIS

13  155091, at *18 (C.D. Cal. Oct. 25, 2013) ("It would be inefficient to have individual members of

14  the Class—who are likely geographically dispersed, given that CIL was a publicly-traded

15  company—bring separate claims in scattered courts across the country. Such fragmentation would .

16  . . create a risk of inconsistent judgments."); *see also In re Nationwide Fin. Servs. Litig.*, No.: 2:08-

17  CV-00249, 2009 U.S. Dist. LEXIS 126962, at *30 (S.D. Ohio Aug. 18, 2009) ("Here absent class

18  certification, the various Shareholder Actions filed against Defendants could result in inconsistent

19  judgments, e.g., regarding whether the transaction should or should not proceed.").

20         The Court may also certify a class under Rule 23(b)(2) "if the party opposing the class has

21  acted or refused to act on grounds generally applicable to the class, thereby making appropriate

22  final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

23  *Rodriguez v. Countrywide Home Loans, Inc.*, 695 F.3d 360, 365 (5th Cir. 2012). Here, Defendants

24  have acted on grounds generally applicable to the proposed Settlement Class members, as the

25  Proxy was disseminated to the entire Settlement Class prior to the Merger and the Merger affected

26  all Affymetrix stockholders in the same way. Further, the relief obtained—dissemination of the

27  Supplemental Disclosures—benefitted all members of the Settlement Class equally. As a result of

28

1   the Settlement, Defendants agreed to disseminate the material Supplemental Disclosures to

2   Affymetrix stockholders prior to the stockholders vote, and thus all Affymetrix stockholders were

3   able to make an informed decision whether to vote for or against the Merger.   Accordingly, a

4   mandatory non opt-out class should be certified under Rules 23(b)(1) and (b)(2).

5   **VII.   THE COURT SHOULD GRANT PLAINTIFFS' COUNSEL'S REQUEST FOR
        REASONABLE ATTORNEYS' FEES AND EXPENSES**

6

7       **A.     The Applicable Legal Standard**

8       Plaintiffs' Counsel respectfully request that the Court award them reasonable attorneys'

9   fees and expenses of $1,000,000, which is unopposed by Defendants.   The Supreme Court has

10  encouraged this type of consensual resolution of attorneys' fees as the ideal toward which litigants

11  should strive.   *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), *superseded in part on other*

12  *grounds*, 42 U.S.C. § 1997e(d)(1) ("request for attorney's fees should not result in a second major

13  litigation.   Ideally, of course, litigants will settle the amount of a fee."); *Hardisty v. Astrue*, 592

14  F.3d 1072, 1078 (9th Cir. 2010) (same).

15      Here, Plaintiffs' Counsel are entitled to an award of reasonable fees and expenses pursuant

16  to the "common benefit doctrine," which recognizes that counsel who create a benefit for others

17  should recover their expenses and reasonable attorneys' fees.   *See, e.g., Mills*, 396 U.S. at 394-95;

18  *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores*, 54 F.3d 69, 71 (2d Cir. 1995).

19  Under the common benefit doctrine, "the vindication of the class' rights . . . is the common benefit

20  conferred on the class that justifies an award of attorneys' fees."   *In re Schering-Plough/Merck*

21  *Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *18 (quoting *Pawlak v. Greenawalt*, 713 F.2d 972,

22  983 (3d Cir. 1983)); *Amalgamated Clothing & Textile Workers Union*, 54 F.3d at 71 ("The

23  common-benefit rationale often is applied in suits by a group of shareholders against a corporation

24  to vindicate some substantial right of all the shareholders of the company.").   The common benefit

25  doctrine is applicable in the context of class and shareholder derivative actions when there is no

26  ascertainable fund from which attorneys' fees can be paid, but the litigation has conferred a

27  substantial non-monetary benefit on an ascertainable group and the court has jurisdiction over both

28

1  the subject matter of the lawsuit and the defendant.  *See Mills*, 396 U.S. at 396.  In light of the

2  substantial benefits conferred on Affymetrix shareholders as a result of Plaintiffs' Counsel's efforts,

3  the requested fee and expense amount is appropriate here under the common benefit doctrine.

4      In determining the appropriate amount of an award of attorneys' fees, the Court should

5  consider Plaintiffs' Counsel's lodestar and expenses, and the relevant "*Kerr*" factors set forth by the

6  Ninth Circuit.  In *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), the Ninth

7  Circuit adopted from the Fifth Circuit the following factors to be considered in the balancing

8  process required in a determination of the reasonableness of attorney fees:

> (1) the time and labor required, (2) the novelty and difficulty of the questions
> involved, (3) the skill requisite to perform the legal service properly, (4) the
> preclusion of other employment  by the attorney due to acceptance of the case, (5)
> the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations
> imposed by the client or the circumstances, (8) the amount involved and the results
> obtained, (9) the experience, reputation,  and ability of the attorneys, (10) the
> "undesirability" of the case, (11) the  nature  and  length  of the  professional
> relationship with the client, and (12) awards in similar cases.

*Id.*

Plaintiffs' Counsel respectfully submit that their request is fair and reasonable in light of the

benefits achieved, awards in other similar cases, and other relevant factors.

### B.   Plaintiffs' Counsel's Lodestar and an Appropriate Multiplier Support the Requested Fee Award

Plaintiffs' Counsel expended 1088.2 hours of attorney and paralegal time in prosecuting the

Actions.  *See* Rohr Decl. ¶¶ 73,76.  The work performed was necessary to protect the rights of the

Class, and resulted in the Settlement.  Applying the regular hourly rates of Plaintiffs' Counsel,

which are within the range charged by attorneys in similar actions,[20]  results in a total lodestar of

---

[20]      *See National Law Journal 2015 Billing Survey* (Jan. 5, 2015) (reporting average partner billing rates between $715.00 and $1,055.00 per hour; and average associate billing rates between $290.00   and   $678.00   per   hour).   http://www.nationallawjournal.com/id=1202713 809557/Billing-Rates-Rise-Discounts-Abound?slreturn=20150412191141 (Ex. 6 to Rohr Decl.). The requested amount of $1,000,000, after expenses are deducted, would represent an average hourly rate of $672.  "The Supreme Court in *Blum v. Stenson*. . . held that 'reasonable fees. . . are to be calculated according to the prevailing market rates in the relevant community,' *i.e.*, where counsel maintain their office . . ."  *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) (quoting *Blum*, 465 U.S. at 895); *see also Spencer v. Comserv Corp.*, No. 4-84-794, 1986 U.S. Dist.

1    $731,355.50.  *Id.  Jones v. GN Netcom, Inc.* (In re Bluetooth Headset Prods. Liab. Litig.), 654 F.3d

2    935, 944 (9th Cir. Cal. 2011) ("Under the lodestar method, the district court must calculate the

3    lodestar figure based on the number of hours reasonably expended on the litigation, adjusting the

4    figure to account for the degree of success class counsel attained, along with other factors.).

5    Plaintiffs' Counsel also incurred $36,940.15 in expenses in litigating the Actions. *See* Rohr Decl. ¶

6    79.

7            Plaintiffs' Counsel respectfully submit that, consistent with the *Kerr* factors, a reasonable

8    multiplier of 1.32 is also appropriate in this case.  The district court has discretion to adjust the

9    lodestar upward or downward using a multiplier that reflects "a host of 'reasonableness' factors,

10   including the quality of representation, the benefit obtained for the class, the complexity and

11   novelty of the issues presented, and the risk of nonpayment."  *In re Bluetooth Headset Prods. Liab.*

12   *Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011) (quotation marks omitted).

13           Here, Plaintiffs' Counsel pursued the Actions on an entirely contingent basis, obtained the

14   best possible outcome for the Class with respect to their Section 14(a) claim after litigating on an

15   expedited basis, and then conducted discovery to confirm the fairness of the Settlement.

16   Additionally, Plaintiffs' Counsel's undertaking of the Actions necessarily prevented them from

17   devoting resources to other litigation and the prosecution of additional cases.  These factors warrant

18   applying a reasonable multiplier of 1.32.  *See, e.g., Garza v. Sporting Goods Props.*, No. SA-93-

19   CA-1082, 1996 U.S. Dist. LEXIS 2009, at *114 (W.D. Tex. Feb. 6, 1996) (suggesting that "a

20   standard risk multiplier of 2 should be used in all contingent fee arrangements."); *In re Schering-*

21   *Plough/Merck Merger*, 2010 U.S. Dist. LEXIS 29121, at *55-58 (applying multiplier of 2.18 in

22   disclosure-only settlement and noting that a multiplier of 3 may be awarded even in "a simple case

23   where no risks pertaining to liability or collection were pertinent," and that "the application of a

24   multiplier of 2.18 is not uncommon where the lodestar method is applied."); *Wershba v. Apple*

25   _____

26   LEXIS 15863, at *32-33 (D. Minn. Dec. 30, 1986) ("Compensating a nationally recognized
     securities class action attorney at his hourly rate is entirely appropriate.").

27

28

*Computer, Inc.,* 91 Cal. App. 4th, 224, 255 (2001) (stating that multipliers can range "from 2 to 4 or even higher"); *Lealao v. beneficial Cal., Inc.,* 82 Cal. App. 4th 19, 24, 52 (2000) (finding that trial court's refusal to enhance the lodestar as part of a fee award was an abuse of discretion, and opining that a multiplier in excess of 3.5 was reasonable and not ruling out class counsel's original request for a multiplier of 8). Accordingly, the multiplier requested here is within the range of multipliers typically awarded by courts.

### C.    Fee Awards in Similar Cases

The following cases and numerous others further establish the value provided by Plaintiffs' Counsel in pursuing and obtaining non-monetary relief in actions involving alleged corporate wrongdoing and fully support the fee requested here. *See e.g., Lambert v. Tellabs, Inc.*, No. 1:13-cv-07945, Final Order and J. 9 (N.D. Ill. Sept. 11, 2015) ($700,000)[21]; *In re Leap Wireless Int'l, Inc. S'holder Litig.*, Lead Case No. 37-2013-00058491-CU-BT-CTL, slip op. at  (San Diego Super. Ct. Oct. 29, 2014) (awarding $990,000 in attorneys' fees and expenses in a therapeutic settlement providing for, among other things, supplemental disclosures)[22]; *Nichting v. DPL Inc.*, No. 3:11-cv-141, Order and Final J. 7 (S.D. Ohio Feb. 24, 2012) ($700,000 fee for disclosure of previously withheld projections)[23]; *Halliday v. Gymboree Corp.*, No. CGC-10-504544, slip op. at 2 (San Francisco Super. Ct. Dec. 16, 2011) (awarding $800,000 in attorneys' fees and expenses in a disclosure only settlement)[24]; *Himmel v. Sherman*, No. 1016-CV-24783, slip op. at 7 (Jackson Cnty. Mo. June 2, 2011) (awarded $1,000,000 for fees and expenses in a case involving additional disclosures)[25]; *Stein v. Pactiv Corp.*, No. 10-CH-35455, slip op. at 4 (Cook Cty. Il. Cir. Ct. Apr. 28,

---

[21]    Attached as Exhibit 11 to Rohr Decl.

[22]    Attached as Exhibit 12 to Rohr Decl.

[23]    Attached as Exhibit 13 to Rohr Decl.

[24]    Attached as Exhibit 14 to Rohr Decl.

[25]    Attached as Exhibit 15 to Rohr Decl.

1   2011) ($860,000 for additional disclosures)[26]; *IBEW Local 164 Pension Fund v. Hewitt Assocs.,*

2   *Inc.*, No. 10 CH 31612, slip op. at 4 (Cook Cty. Ill. Cir. Ct. Feb. 15, 2011) ($850,000 for additional

3   disclosures)[27]; *In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *48-

4   49 (D.N.J. Mar. 25, 2010) ($3.5 million fee)[28]; *Cty. Of York Emps. Ret. Plan v. Merrill Lynch &*

5   *Co., Inc.*, No. 4066-VCN, slip op. at 6 (Del. Ch. Aug. 31, 2009) ($950,000 for disclosure-only

6   settlement)[29]; *Henkel v. Battista*, No. 3419-VCN, slip op. at 6 (Del. Ch. Dec. 16, 2008) ($1.1

7   million awarded in attorneys' fees and expenses for additional disclosures)[30]; *In re AMC Entm't,*

8   *Inc. S'holder Litig.*, No. 04-CV-220931, slip op. at 3 (Jackson Cnty. Mo. Dec. 2, 2005) (awarding

9   $1.71 million in fees and expenses for additional disclosures).[31]

10          Further, the requested fee and expense award was negotiated by the parties based upon the

11  work performed by Plaintiffs' Counsel, the results achieved, and the fee awards in similar cases,

12  and reflects a compromise reached through arm's-length bargaining.   Defendants' counsel

13  undoubtedly sought to protect the financial interests of their clients, who, unlike the Settlement

14  Class, have a financial stake in the amount of the fees and expenses to be paid.  *See Moore v.*

15  *Verizon Commc'ns, Inc*., No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 15609, at *48 (N.D. Cal.

16  Feb. 5, 2013) (noting that party agreeing to pay attorneys' fees as part of settlement has one

17  "ultimate objective - paying as little as possible. . . .").  In such circumstances, the end result of

18  those negotiations—which reflects all of the counsel's experience and views as to what is

19  appropriate—is entitled to significant weight in considering Plaintiffs' Counsel's fee request.  As

20

21

22  [26]     Attached as Exhibit 16 to Rohr Decl.

23  [27]     Attached as Exhibit 17 to Rohr Decl.

24  [28]     Attached as Exhibit 18 to Rohr Decl.

25  [29]     Attached as Exhibit 19 to Rohr Decl.

26  [30]     Attached as Exhibit 20 to Rohr Decl.

27  [31]     Attached as Exhibit 21 to Rohr Decl.

28

1  the Western District of Texas explained in awarding the agreed upon amount of attorneys' fees in a

2  nonpecuniary settlement:

> This award of attorneys' fees and expenses is separate and apart from the class
> settlement which is not a monetary common fund--and will not in any way diminish
> the class settlement.  Were the Court to reduce the award of class counsel's fees, this
> would not confer a greater benefit upon the class, but rather would only benefit
> [defendant].

6  *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007).  The same reasoning warrants

7  approving the agreed upon attorneys' fee and expense award here.

8      In sum, the above-referenced factors support a fee and expense award of $1,000,000 to

9  Plaintiffs' Counsel.

10  **VIII.   CONCLUSION**

11      For the foregoing reasons, Plaintiffs respectfully request that the Court enter the Proposed

12  Final Order and Judgment, thereby: (a) finally approving the Settlement; (b) finally certifying the

13  Settlement Class for settlement purposes; and (c) approving Plaintiffs' request for reasonable

14  attorneys' fees and reimbursement of expenses.

15  DATED: November 7, 2016

Respectfully submitted,

16  */s/ Barbara A. Rohr*
Barbara A. Rohr

17  FARUQI & FARUQI LLP
10866 Wilshire Blvd., Suite 1470

18  Los Angeles, CA 90024
Telephone: (424) 256-2884

19  Facsimile: (424) 256-2885

20  James M. Wilson, Jr.
FARUQI & FARUQI LLP

21  685 Third Avenue, 26th Floor
New York, NY 10017

22  Telephone: (212) 983-9330
Facsimile: (212) 983-9331

23  *Counsel for Plaintiff Gerald Douglas*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Leigh A. Parker
WEISSLAW LLP
1516 South Bundy Drive, Suite 309
Los Angeles, CA 90025
Telephone: (310) 208-2800
Facsimile: (310) 209-2348

Richard A. Acocelli
WEISSLAW LLP
1500 Broadway 16th Floor
New York, NY 10036
Telephone: (212) 979-7109
Facsimile: (212) 682-3010

*Counsel for Plaintiff Jeffrey S. L.
Cheah*

Adam McCall
LEVI & KORSINSKY LLP
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7290
Facsimile: (202) 333-2121

Donald J. Enright
LEVI & KORSINSKY LLP
1101 30th Street NW, Suite 115
Washington, DC 20007
Telephone:  202-524-4290
Facsimile:   202-333-2121

*Counsel for Plaintiff Steven Merola*

1

**CERTIFICATE OF SERVICE**

2     I hereby certify that on November 7, 2016, a copy of foregoing *Plaintiffs' Unopposed*

3  *Motion for Certification of the Class for Settlement Purposes, Final Approval of the Settlement, and*

4  *an Award of Attorneys' Fees and Reimbursement of Expenses* was filed electronically.  Notice of

5  this filing will be sent by operation of the Court's electronic filing system to all parties indicated on

6  the electronic filing receipt.  Parties may access this filing through the Court's system

7

Dated: November 7, 2016                    By: */s/ Barbara A. Rohr*

8                                                               Barbara A. Rohr

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28